**REVISED, April 17, 1998**

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 97-30378
_____

JAMES T STRONG, Individually and on behalf of
the Class of All Others Similarly Situated;
MASSEY K MCCONNELL, Individually and dba B A S
Const Co; RENE JACKSON; PAMELA DIANE WALTERS
HENRY; CLEOPHAS MAY,

                Plaintiffs

JAMES T STRONG, Individually and on behalf of
the Class of All Others Similarly Situated;
MASSEY K MCCONNELL, Individually and doing
business as B A S Const Co,

                Plaintiffs - Appellants,

versus

BELLSOUTH TELECOMMUNICATIONS INC, doing
business as South Central Bell,

                Defendant - Appellee.

Appeal from the United States District Court
For the Western District of Louisiana

March 23, 1998

Before WIENER, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiffs' counsel appeal the district court's order denying

an additional $1.5 million in attorneys' fees and costs.  Finding

no abuse of discretion, we affirm.

I

Plaintiffs brought suit in Louisiana against BellSouth Telecommunications, Inc. ("BellSouth"), alleging that BellSouth violated antitrust laws by misleading customers about its inside wire maintenance service plan ("IWMS plan"). Specifically, plaintiffs claimed that BellSouth told its customers that they would not receive the IWMS plan unless they affirmatively elected it, but then treated customers' silence as acceptance of the plan, thereby leveraging its local telephone service monopoly to acquire a monopoly of the IWMS plan. Parallel suits were filed in Mississippi, Alabama, and Tennessee.[1]

As in the companion suits, the plaintiffs here sought to certify a class pursuant to FED. R. CIV. P. 23 on behalf of all residential and small business customers receiving the IWMS plan. The district court, however, denied class certification. The parties subsequently entered into settlement negotiations and, after mediation, reached a global settlement agreement (the "Agreement"), which covered the seven pending suits and conditionally certified the class for settlement purposes. In the Agreement, BellSouth agreed to provide settlement class members with information that fully described the IWMS plan and its terms and conditions. The settlement class members then had the option to either (1) continue as a subscriber to the plan under the stated terms and conditions, or (2) cancel the service and, if eligible, obtain a credit on their monthly telephone bill for up to twenty-

---

[1] Suits were brought in federal court in each of the four states and in state court in Alabama, Louisiana, and Mississippi.

-2-

four months as long as they continued to receive local telephone service from BellSouth. The amount of the available credit varied by state: for Louisiana and Mississippi, the credit amounted to $0.80 per month, for Alabama, $0.60 per month, and for Tennessee, $0.50 per month. To be eligible for the credit, the customer had to have paid for the IWMS plan for six months prior to the date the class was established and not had a repair or service call between January 1, 1987 and the date the class was established.[2] Plaintiffs' counsel calculated that if every class member were eligible for and elected to receive the credit, BellSouth's liability would amount to approximately $64 million))a sum which plaintiffs' counsel refers to as a $64 million "common fund."

BellSouth also agreed to pay an additional $6 million to plaintiffs' counsel for attorneys fees and costs. The original, unamended Agreement addressed attorneys' fees as follows:

> 14. South Central Bell will pay Plaintiffs' counsel the total sum of six million dollars ($6,000,000) as reasonable compensation for fees, time, work and all expenses (including, but not limited to, court costs, expense of depositions and expert fees) spent in representation of the Plaintiffs and Settlement Class Members in all cases on Exhibit A. . . . The Notice of Class Settlement shall include a statement that South Central Bell has agreed to be responsible for such costs and attorneys' fees that are attributable to the litigation in that state and that they shall not be

_____

[2] While the district court did not specifically address how many class members would be ineligible to receive the credit, the record reveals that BellSouth made over 250,000 dispatches for inside wire service in each of 1993 and 1994 and over 120,000 for 1995 (through May 1995). Also, a class member who was eligible for a credit at the time of the election would become ineligible if he moved out of the state or to an in-state address not serviced by BellSouth or if he disconnected his telephone service after the date the class was established.

deducted from the recovery by the class. . . .
The notice to Louisiana class members stated that "the settlement
provides for payment of $1.5M as total compensation for fees, time,
expenses, and work spent by the attorneys who represent the
Settlement Class and Plaintiffs." For reasons of administrative
ease, the parties arrived at the $1.5 million figure simply by
dividing $6 million equally among the four federal cases.

To be enforceable, the Agreement required the final approval
of each federal court, pursuant to FED. R. CIV. P. 23(e).[3] Any
modification to the Agreement, whether by a party or a court, would
render the Agreement void. Filing joint motions in support of the
Agreement and requesting preliminary approval, the parties
presented the Agreement to the respective federal courts. The
district court entered an order of preliminary approval and
scheduled a hearing on the Agreement. At the hearing, the parties
clarified that the Agreement dictated that the court had to rule on
the Agreement as a package and could not separate the benefits to
the class from the attorneys' fees. While the court expressed its
opinion that the parties reached the Agreement without fraud or
collusion and that the attorneys' fees did not drive the
settlement, it nonetheless voiced concern about the reasonableness
of the attorneys' fees, particularly that the $64 million "common
fund" figure was illusory.

Less than one week after the hearing, the district court

---

[3] The Agreement provided that once all four federal courts entered final orders approving the settlement, the parties would dismiss the state court actions.

-4-

issued an order in which it expressed continued misgivings about the attorneys' fees portion but acknowledged that the Agreement had to be approved as a whole. The court posed many specific questions to plaintiffs' counsel about the time records that they had submitted to support the approximately 21,000 hours they claimed for the four-state litigation. Plaintiffs' counsel responded with detailed answers to the court's questions, disclosing that a few of the entries were erroneous. Remaining unconvinced of the reasonableness of the attorneys' fees, the court denied the parties' joint motion to approve the Agreement. The court remained concerned about entries in the submitted time records and again questioned class counsel's assertion that a $64 million "common fund" was available to class members. Although expressing satisfaction with the agreed benefits to the class, the court indicated that only the attorneys' fees award prevented his approval of the Agreement.

Following further communications between themselves and with the court, the parties decided to amend the Agreement. The resulting amendment provided that BellSouth would pay plaintiffs' counsel a maximum of $6 million as compensation and recited that the federal courts in Alabama, Mississippi, and Tennessee had approved a cumulative award of $4.5 million. The amendment vested the determination of the amount of Louisiana attorneys' fees with the Louisiana federal court:

> The Parties agree to leave the determination of the appropriate quantum of compensation to be paid to Plaintiffs' Counsel for Louisiana to the federal court in Louisiana, taking into account such factors as the court

deems appropriate.  In no event shall the total amount of compensation payable to Plaintiffs' Counsel be less than the $4.5 million previously approved by the federal courts in Alabama, Mississippi and Tennessee and in no event shall the total amount of compensation paid to Plaintiffs' counsel by South Central Bell exceed the $6,000,000 agreed to by the Parties in the original Agreement.

In a joint motion requesting approval of the amended settlement agreement, the parties stated that they would reserve the issue of attorneys' fees in the Louisiana litigation for future action by the district court until after the benefits had been distributed to the class members in all four states.  The parties further stated that they would provide the court with whatever data it would require, including data about the actual benefits provided to the class members.

In January 1996, the court entered a final order approving the Agreement, as amended, and expressly reserved the determination of attorneys' fees, if any, to be paid to plaintiffs' counsel until after the parties had provided the court with information concerning the distribution of benefits.  In the last few months of 1996, the parties presented detailed records of the claims submitted to BellSouth and jointly asked the court to approve an additional $1.5 million attorneys' fees payment.  Using the lodestar method, the district court examined the reasonableness of the requested fee and decided that an award of attorney fees above the $4.5 million already awarded by the other courts was not warranted.  The court subsequently entered final judgment, and plaintiffs timely appealed.

At the outset, plaintiffs' counsel challenges the scope of the district court's authority to review attorneys' fees. The court's discretion is limited, plaintiffs' counsel argues, for two reasons: the parties agreed to the fee, and the fee was not deducted from a common fund. Plaintiffs' counsel maintains that, in these circumstances, once the court found that the class received a fair settlement, that the settlement agreement was consummated at arm's length, without collusion or fraud, and that the attorneys' fees did not drive the settlement, the court had no discretion to assess the reasonableness of attorneys' fees.

Counsel's position underestimates, however, the scope of the court's duty under Rule 23 to protect absent class members and to police class action proceedings. *See* FED. R. CIV. P. 23(e) ("A class action shall not be dismissed or compromised without the approval of the court . . . ."); *see also Evans v. Jeff D.*, 475 U.S. 717, 726, 106 S. Ct. 1531, 1537, 89 L. Ed. 2d 747 (1986) ("Rule 23(e) wisely requires court approval of the terms of any settlement of a class action . . . ."). This duty is not limited to a review of the substantive claims included in the agreement. Instead, the "duty to investigate the provisions of the suggested settlement includes the obligation to explore the manner in which fees of class counsel are to be paid and the dollar amount for such services." *Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 680 (S.D. Tex. 1976), *aff'd*, 577 F.2d 335 (5th Cir. 1978). To fully discharge its duty to review and approve class action settlement

agreements, a district court must assess the reasonableness of the attorneys' fees. *See Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980). "The purpose of this salutary requirement is to protect the nonparty members of the class from unjust or unfair settlements affecting their rights" as well as to minimize conflicts that "may arise between the attorney and the class, between the named plaintiffs and the absentees, and between various subclasses." *Id*. at 1327-28. Moreover, the court's examination of attorneys' fees guards against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class. *See In re General Motors Corp. Pick-up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995) [hereinafter *In re GM Trucks*] (emphasizing that the "court's oversight function" serves to detect the "potential public misunderstandings that they may cultivate in regard to the interests of class counsel") (internal quotations and citations omitted); *Foster*, 420 F. Supp. at 680 (explaining that the court has the "obligation in any Rule 23 class action to protect [the class action device] from misuse" because the "most commonly feared abuse is the possibility that Rule 23 encourages strike suits promoted by attorneys who simply are seeking fat fees") (internal quotations and citations omitted).

Counsel's first contention))that the district court's responsibility to address attorneys' fees is circumscribed when the parties agree to the amount of fees))is, therefore, without merit in the context of a class action settlement. To the contrary, a

"district court is not bound by the agreement of the parties as to the amount of attorneys' fees." *Piambino*, 610 F.2d at 1328; *Foster v. Boise-Cascade, Inc.*, 577 F.2d 335, 336 (5th Cir. 1978). The court must scrutinize the agreed-to fees under the standards set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), and not merely "ratify a pre-arranged compact." *Piambino*, 610 F.2d at 1328 (holding that by summarily approving attorneys' fees presented in an unopposed settlement agreement, the district court "abdicated its responsibility to assess the reasonableness of the attorneys' fees proposed under a settlement of a class action, and its approval of the settlement must be reversed on this ground alone").

That the defendant will pay the attorneys' fees from its own funds likewise does not limit the court's obligation to review the reasonableness of the agreed-to fees. Restricting the court's discretion to a perfunctory review in such a circumstance would disregard the economic reality that a settling defendant is concerned only with its total liability. *See In re GM Trucks*, 55 F.3d at 819-20 (requiring "a thorough judicial review of fee applications . . . in all class action settlements" because "'a defendant is interested only in disposing of the total claim asserted against it'" and "'the allocation between the class payment and the attorneys' fees is of little or no interest to the defense'") (quoting *Prandini v. National Tea Co.*, 557 F.2d 1015, 1020 (3d Cir. 1977)). Because the defendant's adversarial role with regard to the attorneys' fees is thus diminished, the court

must strive to minimize the conflict of interest between the class and its attorney inherent in such an arrangement. *See Foster*, 420 F. Supp. at 687-88; *see also Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991) (explaining that when fees are paid from the defendant's own funds, a conflict results from "the danger that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees"); *Court Awarded Attorney Fees*, *Report of the Third Circuit Task Force*, 108 F.R.D. 237, 266 (1985) ("Even if the plaintiff's attorney does not consciously or explicitly bargain for a higher fee at the expense of the beneficiaries, it is very likely that this situation has indirect or subliminal effects on the negotiations. And, in any event, there is an appearance of a conflict of interest.")

The court's review of the attorneys' fees component of a settlement agreement is thus an essential part of its role as guardian of the interests of class members. To properly fulfill its Rule 23(e) duty, the district court must not cursorily approve the attorney's fees provision of a class settlement or delegate that duty to the parties. Even when the district court finds the settlement agreement to be untainted by collusion, fraud, and other irregularities, the court must thoroughly review the attorneys' fees agreed to by the parties in the proposed settlement agreement.

## III

### A

We review a district court's award or denial of attorney fees

-10-

for abuse of discretion. *See Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996). We review the court's findings of fact supporting the award for clear error. *See Longden v. Sunderman*, 979 F.2d 1095, 1100 (5th Cir. 1992).

Under the lodestar method, which this circuit uses to assess attorneys' fees in class action suits, the district court must first determine the reasonable number of hours expended on litigation and the reasonable hourly rates for the participating attorneys. *See Forbush*, 98 F.3d at 821. The lodestar is computed by multiplying the number of hours reasonably expended by the reasonable hourly rate. *See id.* Upon a review of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974),[4] the court may then apply a multiplier to the lodestar, adjusting the lodestar either upward or downward. *See id.* However, "[t]he lodestar may be adjusted according to a *Johnson* factor only if that factor is not already taken into account by the lodestar." *Transamerican Natural Gas Corp. v. Zapata Partnership, Ltd.* (*In re Fender*), 12 F.3d 480, 487 (5th Cir. 1994).

Pursuant to the amended Agreement, plaintiffs' counsel sought

---

[4] The twelve *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

a total attorneys' fee award of $6.0 million, which, taking into account the $4.5 million that the three other federal courts had previously awarded, left the court below to decide if an additional $1.5 million payment was reasonable. First examining the number of hours and hourly rates, the district court noted that plaintiffs' counsel claimed to have expended almost 21,000 hours on the four-state litigation, not including 218 additional hours expended by local counsel, and charged hourly rates of $175 for partners, $250 for trial counsel, and $135 for associates. The lodestar fee calculated from these figures amounted to $3,089,127, which, combined with the $652,547 that counsel claimed in costs, totaled $3,741,674. Plaintiffs' counsel requested that the court enhance this lodestar with a multiplier of less than two to yield a total award of $6 million.

Although continuing to question the validity of some of the entries in the supporting fee records, which it had previously reviewed, the court declined to decide whether the claimed hours were compensable time. Instead, assuming without deciding that the records were accurate, the court held that it would award no additional fees because "plaintiffs' counsel ha[d] been more than amply compensated from the funds they have received to date," the total of which exceeded the lodestar figure plus costs. *Strong v. BellSouth Telecomms., Inc.*, 173 F.R.D. 167, 170 (W.D. La. 1997).

In determining that a multiplier was not warranted, the court considered the factors set forth in *Johnson*, focusing on the time and labor involved and the results achieved. The court's decision

not to enhance the lodestar was largely based on its examination of the benefits obtained for the class. The court first considered the nonmonetary class benefits claimed by plaintiffs' counsel to support the enhancement: that the class and public were educated on the choices available for the IWMS plan, that the price for IWMS service had remained static since the time the lawsuit was filed, and that the percentage of BellSouth customers paying for IWMS plan had dropped significantly since the time the lawsuit was filed. The court found that while the class had benefitted from the information about the market for IWMS plans, the additional value of this benefit, above what was already reflected in the submitted claims, was insubstantial. In accordance with the parties' amended Agreement, the court then reviewed the information submitted by the parties regarding the actual distribution of class benefits and found that the value of the credit requests submitted by class members in all four states totaled $1,718,594, an amount drastically less than the $64 million that plaintiffs' counsel claimed it had obtained for the class. The court concluded not only that a multiplier was inappropriate, but, "if anything, the fees should be reduced in light of the insignificant benefit to the class members." *Strong*, 173 F.R.D. at 172.

We are unable to conclude that the district court's refusal to award additional fees was an abuse of discretion. The parties jointly asked the court, pursuant to the amended Agreement, to award up to $1.5 million additional attorneys' fees based on actual claim information. The court below reviewed in detail the class

benefits of the settlement agreement and acted within its discretion in concluding that an enhancement of the lodestar was not warranted. Although the district court did not conduct a detailed analysis of every *Johnson* factor, the court used the *Johnson* framework in evaluating the requested fee and clearly set forth its reasons for denying the fee enhancement. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (requiring the district court "to provide a concise but clear explanation of its reasons for the fee award," but noting that we inspect the district court's lodestar analysis only to determine if the court sufficiently *considered* the appropriate criteria) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983)); *Forbush*, 98 F.3d at 823 (holding that we will not reverse a district court that fails to discuss a *Johnson* factor "so long as the record clearly indicates that the district court has utilized the *Johnson* framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation") (quoting *Cobb v. Miller*, 818 F.2d 1227, 1232 (5th Cir. 1987)). We therefore hold that the district court did not abuse its discretion in denying the requested attorneys' fees.

B

Although they do not contend that the district court misapplied the *Johnson* factors in this case, plaintiffs' counsel claims that the court erred by comparing the attorneys' fees to the actual amounts claimed by the class members rather than the entire

"common fund."  Accordingly, they argue that *Boeing v. Van Gemart*, 444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980), mandates that we reverse the district court for considering the actual rather than potential awards claimed.

We first question whether *Boeing*, which used the percentage of fund method, has any application to a case such as this one, which uses the lodestar method.  Without deciding the implications, if any, of *Boeing* on the lodestar method,[5] however, we find *Boeing* distinguishable on a more significant ground:  unlike *Boeing*, this case does not involve a traditional common fund.

In *Boeing*, the district court entered judgment against Boeing and then ordered Boeing to deposit the amount of the judgment into escrow at a commercial bank.  *Boeing*, 444 U.S. at 476, 100 S. Ct. at 748.  Because each member of the class had an "undisputed and mathematically ascertainable claim to part of [the] lump-sum judgment," the members could obtain their share of the fund "simply

---

[5]     Plaintiffs' counsel does not attempt to explain how *Boeing* would be relevant to a lodestar analysis; they discuss the case only in the context of the percentage of fund method. Although we do not purport to resolve this issue, we note that several courts have advocated the use of the lodestar method in lieu of the percentage of fund method precisely in the situation where the value of the settlement is difficult to ascertain, reasoning that there is a strong presumption that the lodestar is a reasonable fee.  *See, e.g.*, *In re GM Trucks*, 55 F.3d at 821 ("Outside the statutory fee case, the lodestar rationale has appeal where as here, the nature of the settlement evades the precise evaluation needed for the percentage of recovery method."); *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 526 n.10 (1st Cir. 1991) ("[T]he absence of any true common fund renders the percentage approach inapposite here.").

by proving their individual claims against the judgment fund."[6] *Id*. at 479, 100 S. Ct. at 749-50. The Court held that an attorney who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole, including the unclaimed portion.

In contrast to *Boeing*, in this settlement no money was paid into escrow or any other account))in other words, no fund was established at all in this case.[7] In fact, the Agreement neither established nor even estimated BellSouth's total liability.[8] Instead, the Agreement provided each class member with the *option* of either continuing under the plan or canceling the plan and obtaining a credit. Thus, class members who wanted the service would not receive a credit under the Agreement. In addition, class members who did not meet the eligibility requirements also would not receive credits. For these reasons, the district court considered the $64 million "common fund" figure assigned by

---

[6]     The class alleged that Boeing had violated federal and state laws by failing to give reasonably adequate notice of the redemption of certain convertible debentures. The court fixed the amount that each class member could recover on a principal amount of $100 in debentures. *Boeing*, 444 U.S. at 476, 100 S. Ct. at 748.

[7]     This settlement also differed from the *Boeing* settlement with regard to the source of the payment. Unlike in *Boeing*, where the attorneys' fees were deducted from the payments to the class, BellSouth agreed to pay the fees separately from any payment made to class members.

[8]     This characteristic of the Boeing settlement did not escape the *Boeing* Court, which expressly observed that "we need not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support recovery of attorney's fees under the common-fund doctrine." *Boeing*, 444 U.S. at 481 n.5, 100 S. Ct. at 750 n.5.

-16-

plaintiffs' counsel to be a "phantom," likening this aspect of the settlement to settlements providing class members with coupons or certificates, where the true value of the award was less than its face value. *See Strong*, 173 F.R.D. at 172. Even BellSouth, which filed a motion in support of the court's approval of the Agreement, pointed out that the Agreement varied from a traditional common fund in this important respect. Because of the absence of any fund and because the value of the settlement was contingent on class members' desire to continue the plan as well as their eligibility for the credit, we reject the contention of plaintiffs' counsel that the district court abused its discretion by not basing the attorneys' fee award on the $64 million "common fund" value.

We further conclude that the district court acted within its discretion in considering the actual claims awarded. When the court rejected the unamended Agreement, it expressed its concern that the attorneys' fees portion of settlement was unreasonable, particularly because it found counsel's $64 million value of the settlement to be illusory. When the parties amended the Agreement, they agreed to provide the court with information on the actual claims, and the court proceeded on that basis. Although we recognize that this course of action is not the usual one, we note that other courts have crafted similar arrangements to address fee requests like this one that are based on settlements of conditional value. *See, e.g.*, *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 348-52 (N.D. Ga. 1993) (adjusting value of settlement for the likelihood that travel certificates would be used by class

members in determining attorneys' fees and considering the adjusted value when reviewing the "results obtained" *Johnson* factor); *Duhaime v. John Hancock Mut. Life Ins. Co.*, No. CIV.A. 96-10706-GAO, 1997 WL 809597, at *4 (D. Mass. Dec. 31, 1997) (approving the fee request provisionally and permitting immediate partial payment, but reserving the balance for payment either in full or after appropriate adjustment in light of actual experience under the settlement, where settlement value was unknown because class members could opt to receive either relief against their insurance policy or an award through an ADR process). Moreover, as we concluded earlier, the district court conducted a proper analysis under the lodestar method, which produces a presumptively reasonable fee award. We therefore find that under the atypical circumstances of this case, the district court did not abuse its discretion in considering the actual results of the settlement.[9]

### III

For the foregoing reasons, we find that the district court did not abuse its discretion in denying the additional $1.5 million attorneys' fees requested by plaintiffs' counsel. We accordingly AFFIRM the decision of the district court.

----

[9] At oral argument, plaintiffs' counsel vaguely argued that because the district court was presented only with the settlement for Louisiana, it abused its discretion in awarding zero attorneys' fees for the Louisiana litigation. Plaintiffs' counsel failed, however, to present this argument in their brief to this court; in fact, they referred several times to the global settlement and the Louisiana portion as alternative bases for approving the fee. Plaintiffs' counsel therefore waived this issue. See *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 n.2 (5th Cir. 1996) (holding that a party who fails to raise an issue in its brief waives the right to review of that issue).