### MID–CENTURY INSURANCE COMPANY OF TEXAS, Appellant,

v.

### Randy BOYTE and Margaret Boyte, Appellees.

No. 2–00–041–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 18, 2001.

Rehearing Overruled May 3, 2001.

R. Brent Cooper, Diana L. Faust, Michelle E. Robberson, Cooper & Scully, P.C., Dallas, for appellant.

Jay K. Gray, J. Mark Sudderth, Noteboom and Gray, Hurst, for appellee.

Panel B LIVINGSTON, HOLMAN, and GARDNER, JJ.

## OPINION

HOLMAN, Justice.

Appellant Mid–Century Insurance Company (Mid–Century) appeals from the trial court's judgment granted in favor of Appellees Randy and Margaret Boyte (Boyte).[1] In its first and second issues, Mid–Century argues that it cannot be liable for breaching the duty of good faith and fair dealing, for violations of the insurance code, or violations of the Texas Deceptive Trade Practices Act (DTPA). In its third issue, Mid–Century argues that the evidence was legally insufficient, or alternatively, factually insufficient to support the jury's award of Boyte's physical pain or mental anguish damages. In its fourth issue, Mid–Century argues that the evidence was insufficient to support the jury's award of attorney's fees. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 27, 1992, Randy Boyte was involved in a car accident when Kathleen Godfrey struck his vehicle from behind. On January 28, he went to the doctor complaining of back pain. Later that same day, he was again involved in an accident when Alice Kelly ran a flashing red light and collided with his vehicle. Boyte made personal injury protection (PIP) claims with his insurer Mid–Century for the injuries he suffered in both accidents. Boyte had back surgery arising from his injuries in the fall of 1992. He then asserted liability claims against the carriers for both Godfrey and Kelly.

In August 1993, Boyte notified Mid–Century that he was making a claim for underinsured motorist (UIM) benefits under his policy because it had become clear that his injuries were too severe to be completely covered by Godfrey and Kelly's insurance policies. Boyte filed suit against Godfrey and Kelly. Kelly's insurance carrier tendered her $20,000 policy limits to settle Boyte's claims for the second accident. In April 1994, Boyte added Mid–Century to the underlying lawsuit asserting claims for UIM benefits. On October 16, 1995, Godfrey's liability carrier tendered her remaining policy limits of $94,658.62 to settle Boyte's claim for the first accident. The carrier had already deducted the cost to repair the damage to Boyte's car from the $100,000 limit.

In April 1995, Mid–Century evaluated Boyte's UIM claim for the first accident, determined it to be worth $120,000, and tendered $20,000, the difference after subtracting Godfrey's $100,000 settlement. Because Boyte needed a second back surgery, his claims against Mid–Century for the remaining policy limits proceeded to trial in October 1995. The jury found Godfrey negligent and that Boyte had sustained over $200,000 in damages, entitling him to the remaining $80,000 available under the Mid–Century policy benefits. Mid–Century appealed the judgment.

After the judgment was rendered and Boyte found out that Mid–Century was appealing the judgment, he offered to accept the remaining policy benefits and to forgo more than $35,000 in prejudgment interest he was entitled to under the judgment. Mid–Century refused Boyte's offer. Despite the $80,000 judgment for Boyte, Mid–Century only offered to pay $21,400 for the back surgery and $2,000 for therapy. Boyte considered this offer, but declined because the liquidated amount did not account for other reasonable and necessary expenses that his doctors had informed him might arise due to the surgery

---

1. As Appellant points out, although Mrs. Boyte is listed as a party to the appeal, no claims by her were submitted to the jury and she did not recover any damages.

and would not pay for all of the therapy that he was informed he would need. Boyte claimed he was unable to have the surgery because he had personally only recovered approximately $14 from the settlement with Godfrey. Mid–Century did not pay the $80,000 until March 1998, after this court affirmed the trial court's judgment and the Texas Supreme Court denied review.

As a result of Mid–Century's delay in settling his first party insurance claim, Boyte filed suit against Mid–Century asserting breach of fiduciary duty, bad faith, and violations of the insurance code and the DTPA. The case proceeded to trial, and the jury found that Mid–Century knowingly failed to attempt to effectuate a prompt, fair, and equitable settlement of Boyte's claim when it knew or should have known that its liability was reasonably clear. Mid–Century appeals this judgment.

## STANDARD OF REVIEW

### Legal Sufficiency

■ In determining a "no-evidence" issue we are to consider all of the evidence in the light most favorable to the party in whose favor the judgment has been rendered, and to indulge every reasonable inference from the evidence in that party's favor. *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998) (op. on reh'g); *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. denied,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law. *Formosa Plastics Corp.,* 960 S.W.2d at 48; *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996).

■ A "no-evidence" issue may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Merrell Dow Pharm.,* 953 S.W.2d at 711 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L.REV. 361, 362–63 (1960)). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex. 1992).

### Factual Sufficiency

■ An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406 (Tex.), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

### DUTY OF GOOD FAITH AND FAIR DEALING

■ In its first issue, Mid–Century argues that it cannot be liable for breaching the duty of good faith and fair dealing because it chose to appeal the adverse judgment from the UIM lawsuit, and the record contains no evidence or insufficient evidence to establish the breach. Texas courts have recognized the duty of an in-

surer to deal fairly and in good faith with its insured in the processing and payment of claims. *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). A cause of action for breach of the duty of good faith and fair dealing will arise when the insurer either denied or delayed payment of the claim without a reasonable basis and knew or should have known that it had no reasonable basis upon which to deny or delay payment. *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex.1988); *State Farm Mut. Auto. Ins. Co. v. Zubiate*, 808 S.W.2d 590, 597 (Tex.App.—El Paso 1991, writ denied).

Mid–Century contends that no duty of good faith and fair dealing extends beyond judgment. Mid–Century alleges that it and Boyte are no longer in an insurer-insured relationship but that they have been in a judgment debtor-judgment creditor relationship since Boyte obtained a judgment against Mid–Century. It contends that *Stewart Title Guar. Co. v. Aiello* is dispositive of this point because the court in that case held that once a judgment debtor-judgment creditor relationship arises, the duty of good faith and fair dealing ends. 941 S.W.2d 68, 70–71 (Tex. 1997). However, the *Aiello* case dealt with a policy holder who settled his claim and entered into an agreed judgment that was not suspended by any appeal. *Id.* at 69. Therefore, the judgment became final and executable. *Id.* It was not until the insurer failed to perform according to the agreed judgment that the Aiellos attempted to assert a claim for breach of the duty of good faith and fair dealing. *Id.* at 70. The Texas Supreme Court held that an insurance company does not owe a duty of good faith and fair dealing on a claim when the claim has already been settled by both parties. *Id.* at 72.

The facts in this case are clearly distinguishable from the facts in *Aiello*. Here, Boyte did not assert a violation of the duty of good faith and fair dealing after a settlement and an agreed judgment. Boyte's bad faith claims were based on extra-contractual and statutory duties arising from the insured-insurer relationship of Boyte's UIM policy with Mid–Century. Boyte claimed that Mid–Century violated its obligations to him by failing to "attempt to effectuate a prompt, fair, and equitable settlement of [his] claim when it knew or should have known that its liability was reasonably clear." *See* TEX.INS.CODE ANN. art. 21.21, § 4(10)(a)(ii) (Vernon Supp. 2001). Because we hold that the duty of good faith and fair dealing extended beyond judgment in this case, we reject Mid–Century's assertion that the duty had simply ceased to exist.

■ Second, Mid–Century contends that there is no evidence or insufficient evidence to establish that it breached the duty of good faith and fair dealing. The evidence presented at trial established that Botye was insured by a UIM policy issued by Mid–Century. It was also established that Boyte was involved in an accident with Godfrey and that his injuries were in excess of Godfrey's policy limits. Mid–Century never disputed that Boyte was stopped at a red light when he was rear-ended by Godfrey. The police officer who filed the report stated the accident was caused by Godfrey following too closely. At trial, the Mid–Century adjuster who handled the accident claim with Godfrey testified that he determined that Godfrey was negligent. Another Mid–Century adjuster conceded during trial that it was "reasonably clear" that Godfrey's carrier was liable for the accident. In addition, the evidence established Mid–Century conceded Godfrey was responsible for Boyte's injuries in an internal document written prior to the UIM trial. However, Mid–Century still failed to "attempt to effectu-

ate a prompt, fair, and equitable settlement of [Boyte's] claim when it knew or should have known that its liability was reasonably clear."

After reviewing all of the evidence in the light most favorable to Boyte, we cannot say that there was no evidence to sustain the jury's finding that Mid–Century breached the duty of good faith and fair dealing. *See Formosa Plastics Corp.*, 960 S.W.2d at 48; *Leitch*, 935 S.W.2d at 118. In addition, after reviewing the evidence we cannot say that the evidence supporting the jury's finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *See Garza*, 395 S.W.2d at 823. We hold that there was sufficient evidence to support the findings that Mid–Century failed to attempt to effectuate a prompt, fair, and equitable settlement of Boyte's claim when Mid–Century knew or should have known that its liability was reasonably clear. We overrule issue one.

## INSURANCE CODE AND THE DTPA

■ In its second issue, Mid–Century contends that it cannot be liable for violations of the insurance code or the DTPA, or for additional damages for any knowing conduct simply because it chose to appeal the adverse judgment from the UIM lawsuit. Alternatively, it cannot be liable because the record contains no evidence or insufficient evidence to support any violation of the insurance code or the DTPA, or to demonstrate any knowing conduct. First, Mid–Century contends that if the law or lack of evidence negates Boyte's claim for common-law bad faith he cannot recover for violations of the insurance code or the DTPA, or for any knowing conduct. As we noted under the first issue, we hold that the evidence was sufficient for the jury's finding that Mid–Century violated

the duty of good faith and fair dealing. Furthermore, as we noted above, Boyte filed suit based on Mid–Century's failure to attempt to effectuate a prompt, fair, and equitable settlement of his claim when it knew or should have known that its liability was reasonably clear, not because Mid–Century chose to appeal. Contrary to Mid–Century's assertions, the evidence is clear that it determined in 1994 that Boyte's injuries were caused by the accident with Godfrey. Even though liability was reasonably clear, Mid–Century chose not to pay the jury's award until 1998.

After reviewing all of the evidence in the light most favorable to Boyte, we cannot say that there was no evidence to sustain the jury's finding that Mid–Century violated the insurance code and the DTPA, and its finding for additional damages for knowing conduct. *See Formosa Plastics Corp.*, 960 S.W.2d at 48; *Leitch*, 935 S.W.2d at 118. In addition, we cannot say that the evidence supporting the findings is so weak or the evidence to the contrary is so overwhelming that the answers should be set aside and a new trial ordered. *See Garza*, 395 S.W.2d at 823. We hold there was sufficient evidence to support the findings that Mid–Century violated the insurance code and the DTPA and that its conduct was knowing. We overrule issue two.

## AWARD OF DAMAGES

■ In its third issue, Mid–Century argues the evidence was legally insufficient or, alternatively, factually insufficient to support the jury's award of damages for Boyte's physical pain and mental anguish. At trial, the evidence showed that Boyte was involved in two accidents and that his injuries from the accident with Godfrey required back surgery. It was also established that Mid–Century evaluated Boyte's damages from the first accident, deter-

mined that he had suffered $120,000 in damages, and offered to tender $20,000, the difference between the $120,000 and the $100,000 that was already received from Godfrey. The initial case proceeded to trial and the jury found that Boyte had suffered $200,000 in damages. Mid–Century appealed the judgment to this court, which affirmed the judgment, and then to the Texas Supreme Court, which denied review. Only then did Mid–Century tender the $80,000 that remained under Boyte's UIM policy.

Testimony was presented that Boyte was told in 1996 that he needed another operation due to the injuries he sustained and that the success of the surgery would be diminished if the surgery was delayed. As a result of the accident with Godfrey, Boyte suffered from a herniated disk and an aggravation of spondylolisthesis. The accident caused "fragments and pieces" of Boyte's disk to rupture and enter his spinal canal. Testimony was given that Boyte should have had the surgery in 1996, when it was recommended by his doctor. In his 1996 report, Boyte's doctor stated that there was "little question that the patient needs surgery and should avail himself as soon as possible." Boyte suffered from severe and chronic pain and according to his doctor's testimony was "miserable, he was hurting all the time.... It certainly didn't appear he was going to get better without [the surgery]." Boyte's doctor also testified that the surgery he recommended for Boyte was very successful most of the time and would have relieved all or most of his pain. Boyte testified that the only reason he did not have the procedure was because he did not have the funds to pay for it.

Margaret Boyte also testified that her husband was in constant pain and that he was no longer able to do things that he would normally do such as fixing things around the house or carrying groceries out of the store. She testified that this inability to do the things he had normally done prior to the accident caused him embarrassment. She also testified that Boyte became increasingly depressed and that he became insecure and lost his self-esteem. Boyte's neighbor and brother also testified regarding Boyte's depression and the pain that he experienced. Finally, the testimony at trial established that by the time Mid–Century paid the judgment, Boyte's condition had deteriorated to a point where his doctor no longer recommended the same surgery. His doctor testified that the surgery would no longer have the same chance of success and that it "will be more difficult ... for Mr. Boyte to recover because of the time" that had passed.

In addition, the jury was given several limiting instructions with regard to damages. The jury was instructed only to award damages "that resulted from Mid–Century Insurance Company of Texas' conduct;" instructed not to award any amount "for any condition or injury" that may have occurred in the accidents; instructed not to award any amount for any condition or injury and instructed not to award any amount for damages that Boyte "could have avoided by the exercise of reasonable care." Because there is nothing in the record that indicates that the jury ignored the instructions, we will not assume that it did. *See Johnson v. Holly Farms of Tex., Inc.*, 731 S.W.2d 641, 644 (Tex.App.—Amarillo 1987, no writ). After carefully reviewing the evidence, we hold that the evidence was legally and factually sufficient to support the award of mental anguish and physical pain damages. We overrule issue three.

## ATTORNEY'S FEES

In its fourth issue, Mid–Century argues that there was no evidence, or

alternatively, insufficient evidence to support the jury's award of attorney's fees for Boyte's pursuit of this case or the underlying UIM lawsuit. Mid–Century first asserts that Boyte was not entitled to attorney's fees because it is prohibited by section 38.006 of the civil practices and remedies code. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 38.006 (Vernon 1997). However, Boyte brought claims for violation of article 21.21, section 4 of the insurance code. *See* TEX.INS.CODE ANN. art. 21.21, § 4(10)(a)(ii). The jury found that Mid–Century violated the insurance code. Therefore, under article 21.21, section 16 of the insurance code, Boyte was entitled to recover "the amount of actual damages plus court costs and reasonable and necessary attorneys' fees." *Id.* § 16(b)(1). Mid–Century next argues that Boyte failed to prove the reasonableness and necessity of attorney's fees. Mid–Century directs us to *Arthur Andersen & Co. v. Perry Equip. Corp.* in which the Texas Supreme Court stated that a contingency fee arrangement should be considered by the fact finder but cannot alone support an award of attorney's fees. 945 S.W.2d 812, 818–19 (Tex.1997). The court also stated that the plaintiff must prove the amount of the fees was both reasonably incurred and necessary to the prosecution of the case and must ask the jury to award the fees in a specific dollar amount and not merely a percentage of the judgment. *Id.* at 819.

Here, Boyte's attorney testified regarding the time and labor required; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the nature and length of the professional relationship with the client; and the experience, reputation, and ability of the lawyer or lawyers performing the services. *See id.* at 819. In addition, the trial court did not simply ask the jury to award a percentage, but an actual dollar amount, which it did. The testimony of Boyte's attorney regarding attorney's fees was sufficient to show that the fees incurred were reasonable and necessary to pursue this case.

 Finally, Mid–Century argues that Boyte is not entitled to attorney's fees because he did not segregate, as is required, the fees for his claims against Mid–Century from those owed by Godfrey to ensure that Mid–Century was not charged fees for which it was not responsible. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex.1991). However, when attorney's fees are incurred in connection with claims arising out of the same transaction and are so interrelated that the prosecution of the claims required proof of the same facts, segregation is not necessary. *Flint & Assocs. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex.App.—Dallas 1987, writ denied). The Texas Supreme Court has held that insurance coverage claims and bad faith claims are by their nature independent, as Mid–Century contends. *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex.1996). However, the Court has also held that "in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." *Id.; see also Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex.1995). Because Boyte's claims arose as a result of the manner in which he was treated by Mid–Century after he was involved in the accident with Godfrey, we cannot say that the pursuit of those claims did not require proof of the same facts. *See Flint*, 739 S.W.2d at 624–25. Therefore, segregation was not required. *See id.* We hold that the evidence presented was legally and factually sufficient to support the jury's award of attorney's fees. We overrule issue four.

## CONCLUSION

Having overruled Mid–Century's issues on appeal, we affirm the trial court's judgment.