**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 00-10745
_____

MARK RAPPAPORT and TRACEY RAPPAPORT,

Plaintiffs-Appellants,

versus

STATE FARM LLOYDS,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Northern District of Texas
(No. 3:97-CV-2747-L)
_____

October 26, 2001

Before GARWOOD and WIENER, Circuit Judges, and VANCE,[*] District
Judge.

PER CURIAM[**]:

Plaintiffs-Appellants Mark and Tracey Rappaport appeal from
the district court's award of attorney's fees in their suit against
State Farm Lloyds for payment of an insurance claim.  We conclude
that the district court neither abused its discretion nor clearly
erred in awarding fees, and we therefore affirm.

---

[*]District Judge of the Eastern District of Louisiana, sitting
by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.   FACTS AND PROCEEDINGS

In October 1997, the Rappaports, residents of Dallas County, Texas, sued their insurer, State Farm Lloyds, in Dallas County District Court; they alleged contractual claims, including breach of contract and violations of Article 21.55 of the Texas Insurance Code, and a series of extracontractual claims, including fraud, civil conspiracy, and breach of the duty of good faith and fair dealing.  The suit arose out of State Farm's refusal to pay the Rappaports' claim under their homeowner's policy contract for hail damage to the roof of their house.  Relying on the Rappaports' demand for damages totaling $200,000 (including mental anguish and treble damages for the insurance proceeds) and on diversity of the parties, State Farm removed to the United States District Court for the Northern District of Texas.

Discovery proceeded under the supervision of District Judge Solis until August 1998, when the case was reassigned to District Judge Lindsay.  In 1999 the court granted State Farm's motion for summary judgment dismissing the Rappaports' extracontractual claims, and the Rappaports have not appealed this ruling.  The breach-of-contract and Article 21.55 claims went to trial before a jury.

The sole question put to the jury was: "Did the hail damage that led to the need to replace the Rappaports' roof occur during [the insurance coverage period]?"  The jury checked the box, "Plaintiffs did so prove."  The district court entered final

judgment in September 1999, ordering that the Rappaports recover $8,900 in actual damages to their roof, plus interest and costs.

This litigation then entered its second phase, which focused solely on attorney's fees. After the jury verdict, the district court cautioned the Rappaports that:

> Plaintiffs are further directed to submit fees only for time spent pursuing the claim [sic] upon which they ultimately prevailed at trial. No fees will be awarded for time spent on claims and other matters upon which Plaintiffs were unsuccessful.

In issuing this caution, the trial court required the Rappaports — actually, their counsel — to segregate the legal expenses involving the Rappaports' successful claims from those involving their extracontractual claims, which had been dismissed on summary judgment. Nevertheless, the Rappaports' first application for fees failed to segregate the fees as directed, contested the legality of the segregation requirement, and asserted a claim for $71,430 in attorney's fees for the entire case.

The court responded by stating that in its view, applicable law permitted the fee claims to be segregated, and again unequivocally ordered the Rappaports to do so:

> Plaintiffs are hereby ordered to file an amended fee application that segregates fees incurred in prosecuting their successful claims for breach of contract and under Texas Insurance code article 21.55. If Plaintiffs fail to segregate their fees as ordered by the court, the court will segregate the fees and further will take any action it deems appropriate for failure to comply with a lawful court order. Plaintiffs' counsel is

3

warned not to play games with the court or fail to comply with its lawful orders.

Despite this express order and warning to counsel, the Rappaports' first amended application for fees continued to contest the segregation requirement; however, it did segregate the time spent drafting the summary-judgment pleadings and did reduce all other expenses prior to summary judgment by 20 percent, describing this as a "good faith generous estimate of the time that might be reasonably allocated to the unsuccessful claims." No other segregation was attempted. The overall claim for fees dropped to $63,786 — a reduction of about 11 percent.

The court thereupon attempted its own segregation analysis, but was frustrated in this effort because it found the records of the Rappaports' lawyer, Mark Ticer, to be "sketchy and vague in many instances and...[lacking] sufficient explanatory detail for the court to determine which hours were expended on the contracts and Art. 21.55 claims." Describing the allocation of time among the claims as "totally inadequate," the court stated that it was "<u>impossible</u> [emphasis original] for the court to determine the amount of time that was reasonably expended on Plaintiffs' successful contract claim" before the summary-judgment dismissal of the extracontractual claims. Consequently, the district court denied all fees for time expended before its summary-judgment ruling, finding the Rappaports' failure to segregate "really unexplainable and inexcusable." The court also denied as

4

unreasonable some fees related to the successful contract claims, including $8,050 billed by co-counsel, terming that legal service "not necessary for the prosecution of this action."  In the end, the court awarded the Rappaports $18,460 in attorney's fees.

The Rappaports moved to amend or reconsider this judgment and submitted a brief that, while preserving the segregation issue for appeal, did segregate some of the contractual-claim and extracontractual-claim fees from the generality of the case.  This segregation reduced the total attorney's fees request to $57,744 — an additional reduction of $6,042, or approximately 10 percent of the revised request.  On reconsideration, the district court allowed fifty more hours of Ticer's time that the court now understood to be related to the contractual claims, resulting in an increase of $10,940 in fees awarded, for a total of $29,400.  The court viewed this award as reasonable both for the contract claims taken as a whole and in light of the actual damages found in the case; therefore, it stated, "this court will not further expend scarce judicial resources on the attorney's fees dispute."  This timely appeal followed.


II.  ANALYSIS


5

We review a district court's award or denial of attorney's fees for abuse of discretion.[1] We review the court's findings of fact supporting the award, such as its determination of reasonable hours, for clear error.[2]

As this is a diversity case, the district court looked to state law, which governs the fee award.[3] Texas statutes provide that the party prevailing on a breach-of-contract claim "may recover reasonable attorney's fees"[4] and that if an insured sues under Article 21.55, "reasonable attorney fees...shall be taxed."[5] More generally, the Texas Supreme Court has stated that a trial court may award those fees that are "reasonable and necessary for the prosecution of the suit."[6] To calculate the total fee award, the district court must determine the reasonable number of hours

---

[1]See Strong v. Bellsouth Telecommunications, Inc., 137 F.3d 844, 850 (5th Cir. 1998) (citing Forbush v. J.C. Penney Co., 98 F.3d 817, 821 (5th Cir. 1996)); Texas Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc., 907 F.2d 1571, 1575 (5th Cir. 1990) ("An award of attorney's fees is entrusted to the sound discretion of the trial court.").

[2]Strong, 137 F.3d at 850 (citing Longden v. Sunderman, 979 F.2d 1095, 1100 (5th Cir. 1992)); Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir. 1995), cert. denied, 516 U.S. 862 (1995).

[3]Atchison, Topeka and Santa Fe Ry. Co. v. Sherwin-Williams Co., 963 F.2d 746, 751 (5th Cir. 1992).

[4]Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1997).

[5]Tex. Ins. Code Ann. art. 21.55 § 6 (Vernon 2001 Supp.).

[6]Stewart Title Guaranty Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991).

expended and the reasonable hourly rate for each participating attorney.[7]  The product of these is frequently labeled the "lodestar" amount.[8]  The fee applicant bears the burden of proof in showing the reasonableness of the hours applied for: It must provide documentation that will enable the district court to verify this showing, and a district court may reduce the number of hours awarded if the documentation is vague or incomplete.[9]

With these standards in mind, we turn to the three issues raised by this appeal.

A.  Segregating the Claims

Much of the second stage to-and-fro in the district court centered on whether it was proper for the court to order segregation of claims in this case.  Generally, as part of its reasonableness-and-necessity burden, the prevailing party must show that it incurred the subject fees while suing the losing party "on

---

[7]Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (terming this calculation the "most useful starting point for determining the amount of a reasonable fee").

[8]Id.  The lodestar amount may then be adjusted according to the twelve factors set forth in Johnson v. Georgia Hwy. Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974) (including among these factors the "amount involved and the results obtained").  The instant case centers on the calculation of the lodestar itself, rather than an adjustment to it under Johnson.

[9]Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir. 1995), cert. denied, 516 U.S. 862 (1995); see also Riley v. City of Jackson, Mississippi, 99 F.3d 757, 760 (5th Cir. 1996) ("The fee applicant bears the burden of proving that the number of hours and the hourly rate for which compensation is requested is [sic] reasonable.").

a claim which allows recovery of such fees."[10]  The fee applicant

thus must distinguish successful from unsuccessful claims, carve

out the fees incurred to prosecute the successful claims, and limit

its application to those fees only.[11]  Under Texas law, however,

> A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts."  Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are "intertwined to the point of being inseparable," the party suing for attorney's fees may recover the entire amount covering all claims.[12]

The Rappaports contend that their case falls under this exception.

Because whether facts are "essentially the same" depends on

each case's circumstances, the Texas cases on segregation of fees

in fraud and contract claims are either somewhat inconsistent[13] or,

---

[10]Stewart Title, 822 S.W.2d at 10 (citations omitted).

[11]United States v. Reid & Gary Strickland Co., 161 F.3d 915, 919 (5th Cir. 1998) ("A party requesting attorneys' fees carries the burden of proof and the duty to segregate fees.") (applying Texas law); Smith v. United National Bank–Denton (Matter of Smith), 966 F.2d 973, 978 (5th Cir. 1992) ("This burden [of the fee applicant] includes the duty to segregate recoverable fees from those that are not recoverable.") (applying Texas law).

[12]Stewart Title, 822 S.W.2d at 11.

[13]Compare Panizo v. Young Men's Christian Ass'n of Greater Houston Area, 938 S.W.2d 163, 171 (Tex. App. 1996) ("Proof of this scienter requirement [for fraud] would require significant additional pretrial discovery and trial preparation.  We hold the fraud and contract claims in this case do not involve proof or denial of essentially the same facts.") with Mid-Century Ins. Co.

at the least, highly fact-dependent.[14]  Either way, none of these cases supports the proposition that a court clearly errs in requiring segregation of extracontractual claims that did not survive summary judgment.  As State Farm correctly argues, the extracontractual claims certainly would have required proof of facts in addition to those required to establish the contractual claims.[15]  We therefore hold that the district court did not abuse

---

of Texas v. Boyte, 49 S.W.3d 408, 416 (Tex. App. 2001) (holding that a bad-faith claim was not required to be segregated from claims under the insurance code and deceptive trade practices statute); Pegasus Energy Group v. Cheyenne Petroleum, 3 S.W.3d 112, 131 (Tex. App. 1999) (finding that claims alleging fraud and breach of oil well operating agreement were so intertwined as to be inseparable); Triland Inv. Group v. Warren, 742 S.W.2d 18, 25 (Tex. App. 1987), rev'd on other grounds, 779 S.W.2d 808 (Tex. 1989) (holding that segregation of breach-of-contract and fraud claims was not necessary, because the facts proving each claim were "closely aligned," even though the jury's verdict of fraud reflected an error of law).

[14]See Briercroft Service Corp. v. Perez, 820 S.W.2d 813, 817 (Tex. App. 1990), rev'd on other grounds, 809 S.W.2d 216 (Tex. 1991) (stating that trial court properly submitted a jury question on attorney's fees because breach-of-warranty, breach-of-contract, misrepresentation, and deceptive-trade-practices claims were inseparable for purposes of the jury's calculation of attorney's fees); Paramount Nat'l Life Ins. Co. v. Williams, 772 S.W.2d 255, (Tex. App. 1989), writ denied (finding that segregation of successful tort claim from three contractual claims was not necessary because "[i]n this case the causes of action require proof of the same facts beginning with the policy application interview and continuing through the ultimate denial of the claims based on what occurred in that interview").

[15]The contract claim required proof of performance, breach, and damages, see Panizo, 938 S.W.2d at 170, and the Article 21.55 claim required proof of untimely payment, see TEX. INS. CODE ANN. § 21.55. For the Rappaports to have succeeded on the fraud claim, however, would have required different proof of "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth,

9

its discretion in requiring that the Rappaports segregate their successful claims in contract from their meritless claims in tort for purposes of recovering attorney's fees.

B.    Fees for Time Incurred before Summary Judgment

The Rappaports also appeal from the district court's denial of any attorney's fees for legal services rendered before summary judgment.  In briefing this issue to us, the Rappaports have at last done what they had three opportunities to do in the district court: segregate time that was reasonable for and necessary to the contractual claims that actually went to trial.  They urge us to increase the fee award to reflect 17.5 hours spent by their counsel on matters such as removal, scheduling, and disclosure that did not depend on the claim made; 31.6 hours incurred in preparation for and taking depositions of witnesses who testified at trial; and 27.3 hours devoted to State Farm's expert and his report.

That the Rappaports can so segregate their lawyer's time now strongly suggests that they could have done so all along, despite

which was intended to be acted upon, which was relied upon, and which caused injury." Formosa Plastics v. Presidio Engineers, 960 S.W.2d 41, 47 (Tex. 1998) (citations omitted).  The bad-faith claim would have required proof that State Farm "knew or should have known that it was reasonably clear that the claim was covered." State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 448 (Tex. 1997) (citing Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 54 (Tex. 1997)).  The civil-conspiracy claim would have required that the Rappaports prove (1) a combination of two or more persons (2) who agreed (3) on a common purpose, (4) in furtherance of which one of them committed an overt and unlawful act. Operation Rescue—National v. Planned Parenthood of Houston and Southeast Texas, Inc., 975 S.W.2d 546, 553 (Tex. 1998).

their protestations to the contrary, without imperiling appellate review of the segregation question.  Furthermore, as an appellate court sitting in review of a district court's award of attorney's fees — an issue that should not become a second litigation with a life of its own if it can be avoided — we are loath to disturb the district court's order.  "Litigants clearly take their chances that the district court will reject or reduce fee awards if they submit vague or incomplete applications."[16]  That the Rappaports may have finally met their burden of pleading before us does not demonstrate that the district court clearly erred in reviewing their inadequate and non-complying responses to its pellucid directions; on the contrary, it indicates a weakness in their proffered reasons for thrice failing to comply with the court's instruction to segregate.

By denying fees based on time incurred before summary judgment, the district court did not run afoul of the Texas rule that "if a party does not properly segregate attorney's fees, it would be error to completely deny attorney's fees on contract claims, as evidence of unsegregated attorney's fees is more than a scintilla of evidence of segregated fees."[17]  Indeed, the Rappaports will receive $29,400 in attorney's fees, more than three times the

_____

[16]Wegner v. Standard Ins. Co., 129 F.3d 814, 822 (5th Cir. 1997) (citing Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir. 1995), cert. denied, 516 U.S. 862 (1995) (internal quotation marks omitted)).

[17]Jackson Law Office, P.C. v. Chappell, 37 S.W.3d 15, 23 (Tex. App. 2000) (citing Panizo, 938 S.W.2d at 171).

11

quantum received on their insurance claim.  Given the damages they recovered and the simplicity of their triable claims, we do not view this as an inadequate or unreasonably low award.

C.    Co-counsel's Fees

Lastly, the Rappaports appeal from the district court's denial of their application for $8,050 in fees for co-counsel Jack Thomas Jamison, whom Ticer enlisted to assist in trying the case.  To repeat, the only claims then remaining were the ones based on the contract and the insurance code, and the sole issue put to the jury was whether the hailstorm occurred during the term of the policy. The district court denied fees for Jamison because it "did not understand why an additional lawyer with essentially the same skill, experience, and knowledge as that of Mr. Ticer was needed at this stage of the litigation....[C]ertain lawsuits need multiple lawyers, but this lawsuit was not such a case."

Whether a fee application's reported hours are repetitive or duplicative is a question of fact, and we will not disturb the district court's finding absent clear error.[18]  Here, the judge who conducted trial was in the best position to determine whether Jamison supplied any ingredient necessary to the Rappaports' presentation of their case that Ticer himself could not have provided.   In particular, and contrary to the Rappaports'

---

[18]Riley v. City of Jackson, Mississippi, 99 F.3d 757, 760 (5th Cir. 1996) (citing Cooper v. Pentecost, 77 F.3d 829 (5th Cir. 1996)).

12

suggestion to us, Ticer's billing affidavit does indeed reflect time spent preparing jury questions; his records do not clearly establish that the time Jamison spent on the same project was necessary and nonduplicative, at least not to the level of making the district court's finding clearly erroneous.  We perceive no reversible error in the denial of fees for Jamison.

### III.  CONCLUSION

In summary, the district court did not abuse its discretion or clearly err in ordering that the claims be segregated, denying fees for unsegregated time prior to summary judgment, and denying fees for co-counsel.  We therefore

AFFIRM.