UNITED STATES COURT OF APPEALS
For the Fifth Circuit

_____

No. 95-10975

_____


MARY JANE FORBUSH, Individually
an on behalf of all other similarly situated,
                              Plaintiff-Appellee

FREDERICK H. SHIVER, Attorney
                              Appellant

v.

J.C. PENNEY COMPANY, Pension Plan; WILLIAM J. ALCORN;
JAMES P. BRYANT; FRANK ENGELS; JAY P. HUNDLEY;
ROBERT S. GORIN; HENRY H. SCOTT; GERALD L. SHORES
                              Defendants-Appellees


CATHERINE E. RHODES, Individually
and on behalf of all others similarly situated,
                              Plaintiff-Appellee

FREDERICK H. SHIVER, Attorney
                              Appellant

v.

J.C. PENNEY COMPANY, Pension Plan; WILLIAM J. ALCORN;
JAMES P. BRYANT; FRANK ENGELS; JAY P. HUNDLEY;
ROBERT S. GORIN; HENRY H. SCOTT; GERALD L. SHORES
                              Defendants-Appellees
`

Appeal from the United States District Court
for the Northern District of Texas


October 17, 1996

    Before DUHÉ and DENNIS, Circuit Judges, and DUVAL,[1] District

Judge.

_____

[1]  District Judge of the Eastern District of Louisiana, sitting by designation.

DUVAL, District Judge:

**BACKGROUND**

This appeal is from the district court's apportionment of fees for plaintiff's local class counsel in a class action case based on Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001, et seq. Appellant Frederick H. Shiver was first retained as local counsel by lead class counsel, Stephen Bruce, in December 1990. Bruce sent Shiver a letter dated March 15, 1991 (hereinafter "1991 letter agreement") explaining the terms of his compensation as follows: (1) at the conclusion of the case, lead class counsel would submit a request for attorneys' fees "based on reasonable hourly rates and a multiplier to account for contingency"; (2) in the event of a contingency fee award, lead class counsel would "apply for a multiplier **of at least 2.0** on Shiver's behalf." (Rec. 1992) (emphasis added).

In the fall of 1994, the parties agreed to a settlement of the underlying ERISA case that provided for a total settlement recovery ranging between $45 and $80 million, depending on the number of claims and size of benefits. In November of 1994 class counsel requested a 10% award of fees from the common settlement fund. This request was justified as a pure contingency award under the "common fund doctrine," and in addition, as an upwardly modified hourly rate under the "lodestar" approach. The proposed order submitted with the fee motion provided:

> The common fund fee award shall be paid by the J.C. Penny Company, Inc. Pension Plan and shall be allocated by the Class' lead counsel among the law firms who contributed

2

to the prosecution of this action *according to their prior agreements*." (Rec. 1959) (emphasis added). Shiver was included as a signatory to this motion without any reservation concerning the proposed language and appeared at the hearing without objection. At that hearing, the district court made clear that it intended to grant class counsel a straight ten percent fee award at a hearing on January 30, 1995.( Vol. 12, R.E. 38).

Thereafter, Shiver apparently determined that he was not going to be adequately compensated for his services. Disagreeing with lead counsel regarding what prior agreements existed, Shiver filed two motions on February 16, 1995. In a "Motion for Allocation of Part of Common Fund Contingent Fees to Plaintiffs' Local Class Counsel" (Rec. 1945), Shiver sought the district court's assistance in establishing a procedure to resolve the internecine fee dispute. In the body of the motion he acknowledged that there was a letter agreement but contended that it "d[id] not address 'common fund contingent fees'" such as that which was awarded by the district court. (Rec. 1946). Thus, he opined that the district court should determine a process by which this dispute could be resolved. That request included the provision for the Court to make the determination.

The second motion styled, "Motion for Entry of Order Awarding Fees," Shiver specifically took the position that "[h]e was not a party to any such 'prior agreements' that provided for 'the allocation by the Class' lead counsel' nor provide for 'allocation' of common fund contingent fees." (Rec. 1952). In this motion he

3

asked the district court to change the proposed wording of the order for attorneys' fees to read as follows:

> The common fund award shall be paid by the J.C. Penny (sic) Company Inc. Pension Plan *to the individual class counsel to be allocated to law firms who contributed to the prosecution of this action according to percentages established by prior Order of this Court.*[2]

(Rec. 1960) (emphasis added). Shiver also argued that if a common fund contingency fee were awarded, the 1991 letter agreement did not apply. Thus, in the district court, he disavowed the application of the agreement with respect to determining his fee.

Class counsel in response contended that **under the 1991 agreement itself,**[3] Shiver would receive a total lodestar (hours worked multiplied by the appropriate hourly rate) of $86,944 out of a total lodestar of $858,471 as of October 31, 1994. This ratio demonstrated that Shiver's proportion of services performed was approximately 10% to that of the other attorneys involved. Then the same multiplier would be applied as the multiplier for all counsel to this lodestar "to account for contingency." With a ten percent award of attorneys' fees, that multiplier would range from 4.6 if the common fund were $45 million to 8.2 if the common fund were $80 million. A multiplier of "2" was never urged by class

---

[2] No such "previous order" existed at the time of filing, indicating again that Shiver sought a judicial determination of the proper fee.

[3] A second letter dated February 8, 1995, has been referred to in the appeal. (See Rec. 1990) This letter is lead class counsel's memorialization of the fee dispute and his belief that under the letter agreement, Shiver would be entitled to a contingent fee that ranged from 4.6 times each attorney's hourly lodestar if the common fund was $45 million to 8.2 if the common fund was $80 million. The letter does not constitute an "agreement" as the first letter did, rather it was an offer to work out a resolution of the matter that was not accepted by Shiver.

counsel to be applied with respect to determining Shiver's portion of fees.

Class counsel further demonstrated that if there were no agreement, the Texas Disciplinary Rules of Professional Conduct on dividing fees would also result in the identical method for dividing fees as the 1991 letter agreement.  Rule 1.04(f), Texas State Bar Rules, Art. X, § 9.

Shiver then filed "Local Class Counsel's Reply to Class Counsel's Response to Motions of Frederick H. Shiver" (Rec. 2006).  Shiver specifically rejected the position that he should receive the same proportionate amount as the other counsel; rather, he contended that he should receive "the reasonable and customary fee for local counsel in a percentage contingent fee case in this community" which would be between 15% and 33 and 1/3%.  With this motion, two affidavits from local counsel were presented to support his position.

Class counsel again responded and opined that Shiver had not addressed the salient fact that he had been brought into the case under an agreement which provided that he was to be compensated based on his hours with a multiplier "to account for contingency." (Rec. 2052).  Class counsel argues that the fallacy in Shiver's last position was that even a "contingency fee" of the type described in the affidavits (15%-33 1/3 %) would be contingent upon **an agreement** to that end.  There was no such agreement for Shiver to receive a flat contingency fee between 15% and 33 1/3%.  Thus,

the Court concurs that Shiver's flat contingency argument has no valid basis.

On September 20, 1995, Judge Kendall specifically denied "in all things" Shiver's Motion for Entry of Order Awarding Attorneys' Fees and Brief in Support Thereof.[4] (Rec. 2070). Judge Kendall also formally entered a judgment awarding class counsel a common fund contingency fee of 10% of the settlement. (Rec. 2071). A credit against that fund was made for the attorneys' fees awarded under ERISA section 502(g), 29 U.S.C. § 1132(g).

Finally, in a third order issued the same date, styled "Order Denying Motion for Allocation of Part of Common Fund Contingent Fees to Plaintiffs' Local Class Counsel," the district court rejected Shiver's contention that no agreement existed concerning common fund contingent fees. Thus, the district court sought to apply the letter agreement in the context of Shiver's request for the district court to make a determination of the fee to which he was entitled.

The district court declined to award his requested fees of 15% to 33 1/3% of the gross recovery. Instead, it awarded Shiver double his hourly rate for every hour he worked on this case. The district court reasoned that the March 1991 letter from Bruce to Shiver clearly addressed common fund contingent fees citing this specific language:

> . . . Under the heading of Compensation, Mr. Bruce states "[t]he question then becomes the multiplier that is to be

---

[4] This motion was the one requesting the Court to provide a method for the resolution of the fee dispute.

applied to *account for contingency*. A number of recent Title VII and ERISA cases have used a multiplier of 2.0. Thus, if your hourly rate was $200, I would apply for a multiplier of at least 2.0 or $400 per hour." . . . If Mr. Shiver was concerned about the letter and about how the contingent nature of this action would be taken into account when the time for fee-splitting arrived, the time to speak up was in 1991, not February of 1995.

(Rec. 2075).

In determining Shiver's fee award, the district court stated that it considered the factors set forth in <u>Johnson v. Georgia Highway Express Inc.</u>, 488 F.2d 714, 716-17 (5th Cir. 1974). Although the court did not explain how it applied each <u>Johnson</u> factor, the court stated that it knew "who pulled the wagon and who took the chances during the course of this case." The district court then acknowledged that Mr. Bruce's February 1995 letter to Mr. Shiver stated that "the actual multiplier which will be applied ranges from 4.6 to 8.2 depending upon the actual size of the common fund." However, at this proposed rate, the court concluded that "Mr. Shiver's customary hourly fee will mushroom from $275 to either $1265 or $2255 per hour," a fee for local counsel that "would be outrageous **under this record."** (Rec. 2076) (emphasis added).

Finally, the court noted:

Mr. Shiver's actions bring to mind two old adages. Bears make money and bulls make money, but hogs get slaughtered. The Court had hoped that counsel could work this out amongst themselves. However, that did not happen and the dispute is presented to this Court for resolution. A deal is a deal. Mr. Shiver's motion is denied and he will be compensated more than adequately at twice his normal hourly rate under the agreement presented in the 1991 letter."

(Rec. 2076). It is from this order that Shiver appeals.

**7**

Shiver, contrary to his previous position, now argues **not** that he did not get the between 15 and 33 1/3% that he moved for below, but that he got less than the amount that lead class counsel was willing to request for him out of the common fund. Thus, contrary to his position before the district court, Shiver argues that (1) the 1991 letter agreement <u>does</u> apply; (2) it fixes his "uncontested minimum" fee; and (3) the district court did not follow the 1991 letter agreement.

## DISCUSSION

We review an award of attorneys' fees for abuse of discretion. <u>Auclair v. Sher</u>, 63 F.3d 407, 410 (5th Cir. 1995). This Circuit utilizes the "lodestar method" to calculate attorneys' fees. Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating lawyer. <u>Louisiana Power & Light Co. v. Kellstrom</u>, 50 F.3d 319, 324 (5th Cir.), <u>cert. denied</u>, 116 S. Ct. 173 (1995). The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate. <u>Id</u>. The district court may then adjust the lodestar upward or downward depending on the respective weights of the twelve factors set forth in <u>Johnson v. Georgia Highway Express, Inc</u>., 488 F.2d 714, 717-19 (5th Cir. 1974).

Because the district court gave Shiver credit for every hour he expended in this case at his hourly rate, Shiver does not

argue that the district court erred in its computation of his lodestar. Nor does he contest the 10% fee award to class counsel. Rather, Shiver complains only that when the district court adjusted his lodestar upward by a multiplier of two, it erroneously excluded him from his "minimum, uncontested" portion of class counsel's contingency fee.

Shiver argues that no record evidence supports the district court's decision. He points out that his integral role as part of the class counsel team is undisputed. Shiver also argues that no party or counsel took the position that Shiver was owed less than approximately 10%[5] of the total fee award (with a multiplier range of between 4.6 and 8.2). In fact, lead class counsel wrote to Shiver in 1995 and explained that pursuant to the 1991 letter agreement, Shiver "will receive the same percentage of total fee award (approximately 10 percent) as the services he performed bear to the total." Because this 1995 letter established his "minimum, uncontested" fee, Shiver contends that no evidence supports the district court's decision to reduce his share of the award.

This court rejects the basis for Shiver's appeal. As noted, Shiver argued exactly the opposite to the district court--that is he specifically rejected the applicability of the 1991 letter agreement. Instead, he insisted that the court determine his award based on the customary percentage fee for serving as local

---

[5]    The parties dispute the exact percentage.    Appellant says it is 10.1% and Appellees say 9.7%.

counsel in his community.  This Court will not address an argument raised by a party for the first time on appeal, even if it concerns the same issue (attorneys' fees) unless it meets the plain error standard.  United States v. Calverly, 37 F.3d 160, 163 (5th Cir. 1994) (en banc); Douglass v. United Services Auto, Assoc., 79 F.3d 1415, 1424 (5th Cir. 1996) (en banc).  That standard is not met here.  The determination of a fair attorney fee award is not a "purely legal issue."  Furthermore, the Court will not allow a party to raise an issue for the first time on appeal merely because a party believes that he might prevail if given the opportunity to try a case again on a different theory.  Citizens Nat'l Bank v. Taylor (In re Goff), 812 F.2d 931, 933 (5th Cir. 1987).

Even if the Court were to entertain this reversal of position on appeal, Shiver can show no abuse of discretion in the district court's judgment.  Although it is true that lead counsel would have been willing to compensate Shiver based on a multiplier equal to his percentage of the lodestar (9.7%), the 1991 letter agreement promised only that lead class counsel would apply for "a multiplier of at least 2.0."  Moreover, any award required court approval, regardless of the agreements existing between the parties.  "A district court is not bound by the agreement of the parties as to the amount of attorneys' fees."  Piambino v. Bailey, 610 F.2d 1306, 1328 (5th Cir.), cert. denied, 449 U.S. 1011 (1980).  The court must only consider "whether the attorneys' fees proposed are reasonable."  Id.  In this case, the

court, on Shiver's own motion, independently evaluated the value of Shiver's contribution to this case and then entered an award consistent with that contribution, and further, consistent with the 1991 letter. Thus, the district court's judgment is entitled to this Court's deference.

Shiver contends that the district court slashed his fee as a punishment for his having raised the fee dispute in the district court. Shiver alleges that the absence of both legal and factual support "to justify singling Shiver out of the pack of other plaintiffs' counsel" proves this proposition. However, the record does not bear out this position. The district court, provided the following factual and legal rationale for its decision:

> The Court is not ignorant as to who pulled the wagon and who took the chances during the course of this case. The Court considers the typical factors which go into an attorney's fee determination. The *Johnson* factors, as they are commonly called, instruct this Court to consider a variety of circumstances, including, the time and labor required, the novelty and difficulty of the questions at issue, the skill required to perform the legal service properly, the preclusion of other employment, the customary fee, whether the fee is fixed or contingent, the results obtained and the experience, reputation, and ability of the attorneys.

(Rec. 2076). The district court then concluded that the multiplier Bruce was willing to apply to Shiver's lodestar would result in a fee "for local counsel [that] would be outrageous under this record" and further found "payment of no more than $550 [twice his customary hourly rate] to be a reasonable and appropriate fee under the circumstances."

11

Shiver argues that the district court's reasons for his fee award lacked the requisite degree of specificity. "To avoid the risk of remand the district court should explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the Johnson factors was applied." Von Clark v. Butler, 916 F.2d 255, 258 (5th Cir. 1990). Here, the district court listed substantially all the relevant Johnson factors, but did not explain in detail how each factor applied to these particular facts. In addition, Shiver contends that the district court's "hogs are slaughtered" doctrine is not a Johnson factor, and that therefore, the "hog" theory's application in this case was an abuse of discretion.

Although the district court could have used more details and fewer adages in its opinion, it considered the Johnson factors and viewed Shiver's fee request as "outrageous" considering his minor role in the litigation. "A district court's *Johnson* analysis . . . need not be meticulously detailed to survive appellate review:

> If the district court has articulated and clearly applied the criteria . . ., we will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose.

Louisiana Power & Light Co., 50 F.3d at 331 (quoting Blanchard v. Bergeron, 893 F.2d 87, 89 (5th Cir. 1990)). As this Court stated in Cobb v. Miller, 818 F.2d 1227 (5th Cir. 1987):

**12**

> while our cases indicate that the district court must utilize the *Johnson* factors in its analysis on the issue of attorney's fees, we are not required to reverse summarily a district court finding which omits discussion of one of the *Johnson* factors so long as the record clearly indicates that the district court has utilized the *Johnson* framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation."

Id. at 1232.

Moreover, a review of each Johnson factor demonstrates that the district court was justified in its decision to adjust Shiver's lodestar upwards by a multiplier of two.

### 1. The time and labor required

Of the total attorney time spent handling this case, Shiver's contribution of time (as a percentage of the lodestar) is approximately 10%. However, Shiver's time records reveal that of the 350 hours he billed to this case, substantially more than half were spent "receiving and reviewing" documents prepared by others and on telephone conversations after receiving those documents; approximately 25% of the remaining hours were spent attending depositions that he did not take; preparing for or relating to mediation, at which he was also not the lead lawyer; and doing legal research; and the remaining 15% or so were spent on various matters such as making court filings, preparing and sending cover letter correspondence and faxes, and attending two hearings. (Rec. 1724-1743, 1995-2001, 2017-2056). In addition, pursuant to the Local Rules of the Northern District of Texas, Shiver had to be "authorized to present and to argue the client's

**13**

position at any hearing called by the Court on short notice."
Shiver's services averaged about 1.6 hours per week.


### 2. The novelty and difficulty of the questions

Although this case involved novel and difficult questions,
the substantive ERISA work was performed by lead counsel not
Shiver.


### 3. The skill requisite to perform the legal service properly

Shiver is a competent attorney.  However, Shiver, as local
counsel, prepared no independent work product and appeared before
the court only in a limited role.


### 4. The preclusion of other employment by the attorney due to acceptance of the case

Shiver passed up some contingent fee work, such as
representation of some plaintiffs in breast implant litigation,
due to his participation in this case.


### 5.  The customary fee

Initially, in his fee declaration, Shiver submitted that
"the fair and reasonable hourly fee that is charged by other
attorneys with an excess of 20 years trial experience is $275 per
hour to act as local counsel in a case of similar magnitude and
difficulty as this case."  Later, Shiver claimed that the
customary award of a contingent fee was somewhere between 15 and

33 1/3 percent of the total fee.  The district court awarded Shiver $550 an hour for his services.

### 6.  Whether the fee is fixed or contingent

"The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case."  Johnson, 488 F.2d at 718.  When he accepted the case, Shiver had an expectation that, in the event of a contingency fee, Bruce would apply, on Shiver's behalf, "for a multiplier of at least 2.0."  Appellant, of course, counters that in 1995 Bruce told Shiver he would receive ten percent of the common fund, for a multiplier range of between 4.6 and 8.2.

### 7.  Time limitations imposed by the client or the circumstances

The district court's order does not list this factor as one that influenced its decision.  However, it does not appear that any such limitations existed.

### 8.  The amount involved and the results obtained

There is no question that the amount involved here is substantial and that the results obtained are extraordinary.  However, the district court felt that lead class counsel "pulled the wagon" and "took the chances."

### 9. The experience, reputation, and ability of the attorneys

All class counsel are experienced lawyers. Shiver does not contend, however, that he possesses significant experience in ERISA and class action litigation.

### 10. The "undesirability" of the case

Shiver admits that this is a desirable case.

### 11. The nature and length of the professional relationship with the client

Shiver had no relationship with the clients in this case.

### 12. Awards in similar cases

The district court did not discuss this factor, and Shiver does not provide an example of an award in a similar case.

The majority of these factors demonstrate that lead counsel really did "pull the wagon" and supports the district court's actions. Indeed, as some of these factors favor Shiver, the district court did <u>increase</u> (rather than decrease) Shiver's lodestar by a multiplier of two. There is no doubt that the district court's opinion would have benefitted from a more thorough analysis of the <u>Johnson</u> factors; however, the decision is adequately supported by the record. As a result, this Court finds no abuse of discretion on the part of the district court.

Shiver further argues that the district court abused its discretion by awarding him a specific portion of the common fund,

leaving the remainder to be allocated by lead class counsel.[6] This Court, however, upheld a similar award in <u>Longden v. Sunderman</u>, 979 F.2d 1095 (5th Cir. 1992). In <u>Longden</u>, class counsel (Susman) filed a joint petition on behalf of all class counsel for fees benefitting the class as a whole. Then, one of the class counsel (Massie) disagreed with Susman's calculations and filed her own petition fee. The district court awarded the full amount of attorneys' fees requested by Susman (27.5 % of the settlement funds), but excluded Massie and awarded her a stated sum amounting to 40% of her requested fee (to be paid out of the 27.5%). Massie argued that the district court erred when it awarded a percentage amount to the Susman attorneys and then excluded her from sharing in this award. This Court held that the district court acted well within its discretion in apportioning an aggregate award of 27.5% by awarding a single sum to the Susman attorneys that was based on their collective efforts ("leaving apportionment up to the Susman attorneys themselves") and apportioning another sum to Massie (which was less than she had requested). <u>Id</u>. at 1101.


CONCLUSION

Although anyone who has seen the movie "*Babe*" recently might be offended by the district court's insensitivity to the plight of swine, the court did not abuse its discretion. Shiver cannot

---

[6] Shiver does <u>not</u> argue that the district court lacked discretion to make a lump sum attorney's fee award to all class counsel and then allow counsel to divide the total award among themselves in accordance with their contractual agreements.

**17**

argue that the same 1991 letter agreement he disclaimed before the district court controls this dispute.  Even if he could, the record support's the Court's decision.  The district court, as was its duty, independently evaluated the value of Shiver's contribution to this case and then entered an award consistent with that contribution.  The Court was justified in its evaluation of a fair value for counsel's labor.

For the foregoing reasons, the holding of the district court is **AFFIRMED.**