COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00483-CV

 

 


 
 
 William D. Stratton
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 XTO Energy Inc., Bob R. Simpson, William H. Adams
 III, Lane G. Collins, Phillip R. Kevil, Jack P. Randall, Scott G. Sherman,
 Herbert D. Simons, Keith A. Hutton, Vaughn O. Vennerberg II, Louis G.
 Baldwin, Timothy L. Petrus, Gary D. Simpson, Exxon Mobil Corporation, and
 Exxon Mobil Investment Corporation
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

 

FROM THE 352nd
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          In
this shareholder class action, appellant William D. Stratton, the lead
plaintiff and representative of the class members (the Plaintiffs), appeals the
trial court’s order awarding $3,972,367.75 in attorneys’ fees.  We affirm the
trial court’s judgment as modified.

I.  Background
Facts

          In
late 2009, ExxonMobil Corporation (ExxonMobil) and XTO Energy, Inc. (XTO) announced
that they had entered into an agreement that resulted in one of the largest
mergers in U.S. history.  Public shareholders of XTO filed a total of sixteen
putative class actions in a Texas state court, a Delaware chancery court, and a
Texas federal court.  The Plaintiffs alleged that the XTO Board of Directors
breached their fiduciary duty to the shareholders by, among other things,
failing to make full and fair disclosures and failing to maximize shareholder
value in the merger.

          On
April 21, 2010, after two months of intensive discovery, the parties agreed to
a settlement.  As part of the relief, ExxonMobil agreed, subject to court
approval, to pay “up to” $8,800,000 in attorneys’ fees and expenses.  In
September 2010, with their motion for final certification of the settlement
class and final approval of the settlement, Plaintiffs’ counsel filed their
application for attorneys’ fees.  Plaintiffs requested an award of $188,355.66
for expenses and a lodestar of $3,972,367.75 and a multiplier of 2.17, for an
award of $8,611,644.34 in attorneys’ fees (a total award of $8,800,000). 
Counsel attached affidavits of all twenty-one law firms attesting to the work
done by each firm and the hours and rates of their attorneys, and the affidavit
of William Kelly Puls, which detailed the history of the action, including the
negotiations that lead to the settlement, the terms of the settlement, and the
benefits to Plaintiffs.  Because the request was within the range agreed upon
in the settlement, the defendants did not object.

          After
a hearing in which no live witnesses or other additional evidence were
presented, the trial court issued its final judgment granting Plaintiffs’
request for $188,355.66 for expenses, but awarding only $3,972,367.75 of the
requested $8,611,644.34 for attorneys’ fees.  The trial court issued a letter
“to clarify some of the reasons for the court’s ruling.”  In it, the trial
court noted several problems with the evidence supporting the award. 
Specifically, the trial court noted a lack evidence that the hours worked and
rates billed were reasonable.  The trial court also expressed concern that some
of the factors to be considered in granting a multiplier “would not be
appropriate across the board” because of the firms’ differences in size,
location, specialization, and degree of involvement with the case.  The trial
court concluded,

[D]espite the concerns
set forth above regarding the sufficiency of the evidence and gaps in proof,
the court accepted the billed amounts as the lodestar on the assumption that
the Johnson factors have already been applied to justify the unusually
high rates and declined to increase that amount by any multiplier.

          Plaintiffs
filed a motion to modify the judgment and to supplement the record.  They
attached twenty-one affidavits from Plaintiffs’ counsel attesting to the
reasonableness of their respective firms’ rates; an affidavit from Professor
Geoffrey P. Miller, an expert on attorneys’ fees in class actions; and an
affidavit from Professor Arthur R. Miller, a member of the Advisory Committee
on Civil Rules of the Judicial Conference of the United States.  At a hearing
on the motion to modify, Plaintiffs presented live testimony by Professor Geoffrey
Miller and Craig Enoch and submitted an exhibit comparing the rates of
Plaintiffs’ counsel with other firms in Texas and nationwide.  The trial court
took no action on Plaintiffs’ motion and it was denied by operation of law.  The
trial court did not file findings of fact and conclusions of law.  See
Tex. R. Civ. P. 42(h)(3).  Plaintiffs then filed this appeal.

II.  Standard
of Review

In
Texas, the amount of an attorneys’ fee award in a class action is at the sound
discretion of the court, which determines what is reasonable under the
circumstances.  See Cnty. of Dallas v. Wiland, 124 S.W.3d 390, 403 (Tex.
App.—Dallas 2003), rev’d and remanded on other grounds, 216 S.W.3d 344
(Tex. 2007).  To determine whether a trial court abused its discretion, we must
decide whether the trial court acted without reference to any guiding rules or
principles; in other words, we must decide whether the act was arbitrary or
unreasonable.  Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007);
Cire v. Cummings, 134 S.W.3d 835, 838–39 (Tex. 2004).  An appellate court
cannot conclude that a trial court abused its discretion merely because the
appellate court would have ruled differently in the same circumstances.  E.I.
du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995); see
also Low, 221 S.W.3d at 620.  An abuse of discretion does not occur when
the trial court bases its decisions on conflicting evidence and some evidence
of substantive and probative character supports its decision.  Unifund CCR
Partners v. Villa, 299 S.W.3d 92, 97 (Tex. 2009); Butnaru v. Ford Motor
Co., 84 S.W.3d 198, 211 (Tex. 2002).

III.
 Discussion

          In
their third issue, Plaintiffs complain that the trial court abused its discretion
by failing to apply the lodestar enhancement factors in determining the
reasonableness of their request for attorneys’ fees.

          Texas
Rule of Civil Procedure 42(i)(1) states

In awarding attorney
fees, the court must first determine a lodestar figure by multiplying the
number of hours reasonably worked times a reasonable hourly rate.  The attorney
fees award must be in the range of 25% to 400% of the lodestar figure.  In
making these determinations, the court must consider the factors specified in
Rule 1.04(b), Tex. Disciplinary R. Prof. Conduct.

Tex.
R. Civ. P. 42(i)(1).  Those factors are:

(1) the time and
labor required, the novelty and difficulty of the questions involved, and the
skill requisite to perform the legal service properly;

 

(2) the likelihood,
if apparent to the client, that the acceptance of the particular employment
will preclude other employment by the lawyer;

 

(3) the fee
customarily charged in the locality for similar legal services;

 

(4) the amount
involved and the results obtained;

 

(5) the time
limitations imposed by the client or by the circumstances;

 

(6) the nature and
length of the professional relationship with the client;

 

(7) the experience,
reputation, and ability of the lawyer or lawyers performing the services; and

 

(8) whether the fee
is fixed or contingent on results obtained or uncertainty of collection before
the legal services have been rendered.

Tex.
Disciplinary Rules Prof’l Conduct R. 1.04(b), reprinted in Tex. Gov’t Code
Ann., tit. 2, subtit. G, app. A, art. 10 § 9 (West Supp. 2011).  The factors
are very similar, but not identical, to the factors articulated in Johnson
v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974).[2]

          In
its letter, the trial court expressed concern that “many of the hourly rates
charged seemed excessive on their face.”  It stated that in order for the trial
court to consider the high rates to be reasonable, “Johnson factors
would have to be applied to the rates themselves.”  It then explained that its
award of attorneys’ fees was “on the assumption that the Johnson factors
have already been applied” to the lodestar.

          Texas
law is clear that the trial court is required to complete two distinct steps in
awarding attorneys’ fees.  First, the court must calculate the lodestar by
multiplying the number of hours reasonably worked by a reasonable hourly rate. 
Tex. R. Civ. P. 42(i)(1).  Some Johnson factors may be used to determine
the lodestar.  Guity v. C.C.I. Enter., Co., 54 S.W.3d 526, 529 (Tex. App.—Houston
[1st Dist.] 2001, no pet.) (citing Shipes v. Trinity Indus., 987 F.2d
311, 320 (5th Cir. 1993)).  Second, the court must apply a multiplier between
.25 and 4.0 based on any Johnson factors not already considered in the
lodestar.  Tex R. Civ. P. 42(i)(1); see Dillard Dep’t Stores, Inc. v.
Gonzales, 72 S.W.3d 398, 412 (Tex. App.—El Paso 2002, pet. denied) (“If
some of [the Johnson] factors are accounted for in the lodestar amount,
they should not be considered when making adjustments.”).

          Considering
the record as a whole and the trial court’s explanation in its letter, it
appears that the trial court did not complete the required steps.[3] 
Particularly, in view of the clear, direct, and uncontradicted evidence
presented in support of the motion to modify the judgment, Plaintiffs met their
burden of showing an adjustment was needed to arrive at a reasonable fee.  Instead
of calculating the lodestar itself based on what it determined to be the
reasonable amount of hours worked and a reasonable rate for those hours, and
then determining whether the Johnson factors warranted an increase or a
decrease of that amount, the trial court “assumed” that the Johnson
factors were accounted for in Plaintiffs’ calculation.  Although the letter
does not make clear what value the trial court placed on each Johnson
factor, it is clear, after considering the letter in conjunction with the
complete record, that the trial court ignored the uncontroverted evidence that
(1) the suggested lodestar was calculated without enhancement by the Johnson
factors and (2) that an enhancement was warranted by the facts of the case. 
The trial court’s assumption was not based on the evidence presented, was without
reference to the guiding rules and principles, and resulted in an award that
cannot be said to be just.[4]  Because the trial court
did not follow the steps as articulated in rule 42(i)(1), it abused its
discretion by failing to calculate an appropriate lodestar and adjusting it as
warranted.  See Forbush v. J.C. Penney Co., 98 F.3d 817, 823 (5th Cir. 1996)
(holding that it would not reverse the decision of a court that fails to
discuss a Johnson factor “so long as the record clearly indicates that
the district court has utilized the Johnson framework as the basis of
its analysis, has not proceeded in a summary fashion, and has arrived at an
amount that can be said to be just compensation”) (quoting Cobb v. Miller,
818 F.2d 1227, 1232 (5th Cir. 1987)); Copper Liquor, Inc. v. Adolph Coors
Co., 624 F.2d 575, 584 (5th Cir. 1980) (noting that “we should go slow in
finding that” a trial judge abused his discretion but holding that “the
district court abused its discretion by failing to attach appropriate
significance to the Johnson criteria most pertinent to reasonable
attorneys’ fees and by neglecting to develop fully the reasons for his award”).

          The
dissent would have us remand the case for further proceedings.  In this case,
however, we do not think remand is necessary.  See Tex. R. App. P. 43.3
(“When reversing a trial court’s judgment, the court must render the judgment
that the trial court should have rendered, except when: (a) a remand is
necessary for further proceedings . . . .”).  The record before us contains all
of the affidavits and records submitted in support of the request for
attorneys’ fees, and the testimony presented was not contradicted by any other
witness or attendant circumstances but instead was clear, positive, and free
from circumstances tending to cast suspicion thereon.  In the interest of
judicial economy and our duty to render judgment unless remand is necessary, we
review the evidence and render the appropriate judgment.  See id.;
Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 882 (Tex. 1990)
(rendering a judgment on attorneys’ fees “[i]n the interest of judicial
economy”); see also Louisiana Power & Light Co. v. Kelstrom, 50 F.3d
319, 325–26 (5th Cir. 1995) (choosing to exercise its option to modify an award
of attorneys’ fees “[b]ecause the record contains sufficient information to
allow a fair determination of a reasonable fee”); Sidag Aktiengesellschaft
v. Smoked Foods Prods. Co., 960 F.2d 564, 566–67 (5th Cir. 1992) (rendering
instead of remanding when sufficient evidence existed in the record because “no
useful purpose would be served by further delaying [the case’s] final disposition,
not to mention exposing the parties and this court to yet [another] appeal”).

A.  Calculating
the lodestar

          The
lodestar is calculated by multiplying the number of hours reasonably spent by
counsel on the matter by a reasonable hourly rate.  Dillard Dep’t Stores,
72 S.W.3d at 412; Guity, 54 S.W.3d at 528–29.  Plaintiffs submitted roughly
7,370 hours at various rates from $200 to $845 per hour for a lodestar of
$3,972,367.75.  We will review the evidence supporting both the number of hours
and the hourly rates requested.

1.  Hours

With
their application for attorneys’ fees, Plaintiffs’ counsel presented no
evidence in the twenty-one attached affidavits by the attorneys that their
hours or their rates were reasonable.  With their motion to modify, Plaintiffs
submitted twenty more affidavits from the attorneys.[5] 
In all but five of those affidavits, the attorneys testified that the hours
spent by their firm on the case were reasonable and necessary.[6] 
All of the firms detailed in their affidavits the tasks that the attorneys
accomplished, such as researching, drafting, and filing; reviewing documents;
responding to discovery requests; conducting depositions; and negotiating the
settlement.

Plaintiffs
also submitted the affidavits of expert witness Geoffrey P. Miller.[7] 
Miller and Craig Enoch also testified at trial.  In his affidavit, Miller
opined that based on his review of the hours billed by the attorneys, “[t]he
hours spent appear reasonable for the tasks accomplished.”  He further stated,
“Considering the huge amount of work done as described in the submissions in
support of the fee application, this time is, in my experience, consistent with
the time needed to properly litigate a case of this type and magnitude.”  He
noted that “expertise of the Plaintiffs’ firms contributed to efficiency and
reduced hours” and that,

Where practical and
appropriate, work appears to have been performed by associates, paralegals[,]
and law clerks.  By far, the overwhelming bulk of the work was done by
attorneys with the appropriate, but not excessive, seniority to handle
level-appropriate aspects of the Actions.  In sum, based on my review of the
affidavits of counsel submitted with the Final Approval Motion and wit[h] this
Motion, my analysis indicates that Plaintiffs’ counsel put in the time
necessary to achieve a successful result but did so in an efficient manner.

At
trial, Miller testified again that the hours billed were reasonable in light of
the “extraordinary intensity of the litigation.”  Enoch also testified at trial
that the hours billed were reasonable.

Plaintiffs
provided evidence, by way of expert testimony, that the hours billed were
reasonable and necessary.  And although neither Miller nor Enoch
reviewed line by line each task billed, Texas courts have repeatedly held that an
itemized bill is not necessary to support an award of attorneys’ fees.  La
Ventana Ranch Owners’ Ass’n v. Davis, No. 03-09-00452-CV, --- S.W.3d ---, 2011
WL 2162886, at *16 (Tex. App.—Austin June 3, 2011, no pet.) (holding that the
evidence was factually sufficient to establish the reasonableness of the time
spent “[e]ven without an itemized billing statement or testimony regarding the
reasonableness and necessity of the amount of time spent on each particular
task” when the attorney and an expert witness testified that the amount was
reasonable and the attorney listed the various tasks he accomplished); Burnside
Air Conditioning & Heating, Inc. v. T.S. Young Corp., 113 S.W.3d 889,
898 (Tex. App.—Dallas 2003, no pet.) (upholding fee award absent any itemized
billing statement based solely on attorney’s testimony regarding his customary
hourly rate, total hours spent on the case, his experience and expertise, and
complexity of the case).  There is thus sufficient evidence before us to determine
that the number of hours billed were reasonable.

Plaintiffs
stated in their application for attorneys’ fees that the total amount of hours
equaled 7,369.55.  However, in adding up the hours listed in the affidavits, we
arrived at 7,369.9 total hours submitted.  In examining the amounts submitted,
we discovered two additional errors.  First, one attorney at Baron & Budd,
P.C. submitted 47.25 hours at a rate of $700 per hour (a total of $33,075 in
fees), but requested only $23,100, which would be the correct fee for 33 hours
of work.  Second, an attorney at Grant & Eishenhofer, P.A. submitted 592.8
hours at $295 per hour (a total of $174,876 in fees) but requested only
$174,787.50, which would be the correct fee for 592.5 hours of work.  Because it
is unclear that the higher number of hours for the two attorneys is appropriate,
we hold there is support for 7,355.3 hours of work reasonably expended.  See
Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991)
(noting that as a general rule, a party seeking to recover attorney’s fees carries
the burden of proof to establish that it is entitled to them).

2.  Rates

All twenty-one
of the attorneys’ affidavits attached to the original application for
attorneys’ fees stated merely that the rates requested were the firms’ “regular
rates that [the] firm[s] charge[] both hourly clients and contingent clients
alike for [their] services.”[8]  In the twenty affidavits
submitted with their motion to modify, all but six attorneys testified that the
rates charged by their firm were reasonable in comparison with the rates
charged for similar work in their communities.  Although the customary fees
charged in the local legal community for similar legal services is helpful in
determining the reasonableness of the fees requested, it is not fatal to an
attorney’s application for fees if it is not included.  See In re A.B.P.,
291 S.W.3d 91, 98 (Tex. App.—Dallas 2009, no pet.) (noting that a trial
court is not required to receive evidence of each of the factors that should be
considered in determining the reasonableness of an award of attorneys’ fees); Burnside
Air Conditioning & Heating, 113 S.W.3d at 897–98 (same).  All of the
rates charged by those six firms fall within the range of hourly rates charged
by other attorneys in this case with similar experience.  Four firms also noted
that their rates have been approved by other Texas courts.  One affiant
attached The National Law Journal’s survey of firm billing rates for 2007,
2008, and 2009, which showed that all of the rates requested were within the
range of rates billed by other firms in their state.  Further, in their motion
for reconsideration, Plaintiffs cite a number of cases demonstrating that the high
rates for the New York law firms were not out of line with the customary rates
of the area.  See In re Comverse Tech. Secs. Litig., No.
06-CV-1825(NGG)(RER), 2010 WL 2653354, at *4 (E.D.N.Y. Jun. 24, 2010) (noting
hourly rates from $125 to $880); In re Marsh ERISA Litig., 265 F.R.D.
128, 146 (S.D.N.Y. 2010) (hourly rates of $125 to $775); In re Telik, Inc.
Secs. Litig., 576 F. Supp. 2d 570, 589–90 (S.D.N.Y. 2008) (hourly rates of
$300 to $750); In re Gilat Satellite Networks, Ltd., No. CV-02-1510(CPS)(SMG),
2007 WL 2743675, at *17 (E.D.N.Y. Sept. 18, 2007) (hourly rates of $325 to
$725); In re Merrill Lynch & Co. Research Reports Secs. Litig., No.
02-MDL-1484(JFK), 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (hourly rates
of $515 to $850).

Enoch
testified at the hearing that the rates charged by the attorneys in this case
were “eminently reasonable” based on “the quality of the lawyers that are in
this representation here and my familiarity with the fees that are generally
charged for this type of complex litigation.”  He testified that he saw no
“bonus or premium embedded” in the rates charged by the attorneys.  Geoffrey Miller
opined in his affidavit that “the rates charged by Plaintiffs’ counsel in the
three actions are commensurate with the rates prevailing in their respective
communities for attorneys who practice in the same areas in which these attorneys
specialize or concentrate.”  Miller noted that the average hourly rate
requested in this case was $539 per hour for all attorneys and compared that to
a study that “found that the average hourly rate based on attorneys’ fees
awarded in 277 securities cases settled from 1973 to 2003 was $1,370 in 2003
dollars.”  We therefore hold that the rates submitted by the attorneys in this
case are reasonable.

3.  Lodestar

As
discussed above, we hold that a reasonable number of hours expended in this
litigation is 7,355.3.  Multiplying the hours by the respective rates submitted
by the attorneys results in a lodestar of $3,968,277.25.[9]

B.  Applying
a multiplier

Once
the lodestar is calculated, rule 42(i)(1) requires the court to award an amount
“in the range of 25% to 400% of the lodestar figure.”  Tex. R. Civ. P.
42(i)(1).  Plaintiffs requested an award of 217% of the lodestar.  In
determining whether this is a reasonable award, the court is required to
consider the factors listed in Texas Disciplinary Rule of Professional Conduct
1.04(b).  Id.

1.  The
time and labor required, the novelty and difficulty of the questions involved,
and the skill requisite to perform the legal service properly

 

Enoch
testified at the hearing on Plaintiffs’ motion to modify that he believed a
multiplier should be used in this case because the “intensity of the issue”
called for a lot of time and labor.  Geoffrey Miller testified that the “Actions
involved a plethora of difficult, unsettled, and novel issues of law.”  He
opined, “[T]here can be no question that the magnitude, complexity and novelty
of the issues presented in this litigation favor a substantial risk
multiplier.”  Miller also testified to the added risks of a class action such
as getting class certification.  From his research he concluded that

Multipliers in
securities actions tend to be higher than multipliers in statutory fee-shifting
or other types of less complex or costly class actions.  This fact reflects
reality that cases pursued on a class basis are among the most difficult to
litigate, require a high degree of sophistication, are defended invariably by
capable and sophisticated law firms, and involve risks in terms of dedication
of resources, expenditure of time and potential for non-payment.

 

2.  The
likelihood, if apparent to the client, that the acceptance of the particular
employment will preclude other employment by the lawyer

 

Enoch
described this type of fast-paced litigation as “all-hands-on-deck” and noted
that the document-intensive discovery and short deadlines means that “when
someone is asking you to do this[,] they recognize they’re calling on all your
people to be available on this one item or this one project.”

3.  The
fee customarily charged in the locality for similar legal services

 

As
noted above, the hourly rates charged by the attorneys in this case are within
the range of rates charged by other attorneys in their respective localities. 
We do note that the rates charged in some of the larger markets, such as New York,
are higher than those charged in Tarrant County.

4.  The
amount involved and the results obtained

In
his affidavit, expert witness Arthur Miller testified that that the results
that Plaintiffs’ counsel obtained were excellent.  He believed that the supplemental
disclosures that resulted from the litigation provided vital information to the
Plaintiffs and supported the requested attorneys’ fee award.  He noted that discovery
in this case revealed that the defendant companies had not provided the financial
advisor who was responsible for valuing XTO and opining on the fairness of the
merger with all the necessary documents to make a fully-informed opinion, and he
detailed the value of the information gleaned from the litigation in his
fifteen-page affidavit.  Miller also noted that in his research he found only
one other instance of plaintiffs’ counsel “achieving a similar type and level
of disclosure.”  That case was a New York case concerning a $9 billion merger
and the attorneys’ fee award was $8.5 million.  The merger that formed the
basis of this litigation was valued at $41 billion—as Geoffrey Miller described
it, “one of the most important mergers in American history.”  Enoch testified,
“The results being sought [were] to assure full, accurate information.  It
seemed to me that was a very good result here, and that’s a positive.”  Enoch
testified that the value of the disclosures was significant and went on,

But it seems to me
there was even greater benefit here, where the specialist, the financial advisers
that were advising on the deal, were directed to consider further information
and then report on that.  It seems to me it says—it’s greatly valuable to have
the confirmation. . . .  So it seemed to me this was
tremendously beneficial in the concept of what this is all about, which is to
make sure the voters are informed at the time they’re casting their vote.

In
William Kelly Puls’s affidavit attached to the application for attorneys’ fees,
he noted that “overwhelmingly positive reaction of the Class members to date
further illustrates the excellence of the Settlement.”  Plaintiffs’ counsel
estimated the percentage of class members who objected to the settlement to be
roughly .002 percent.

5.  The time limitations imposed by the client
or by the circumstances

          Because
Plaintiffs filed for a temporary injunction to halt an upcoming vote by the XTO
shareholders on the merger, the parties to this case agreed on an expedited
discovery schedule.  In the roughly four months of discovery, Plaintiffs’
attorneys reviewed hundreds of thousands of pages of public filings, financial
analyst reports, business media articles, and about 65,000 pages of
confidential documents.  At the hearing, Enoch testified that this kind of
intensive document review is stressful and time consuming.  He described cases
with a short deadline and complex issues as “all-hands-on-deck and it’s full
speed ahead for a very short period of time.” Geoffrey Miller opined that highly
compressed timelines “strongly favor[] a substantial lodestar enhancement.”

6.  The
nature and length of the professional relationship with the client

 

          This
was a contingency fee case in which Plaintiffs’ attorneys represented a large
class of shareholders who held approximately 584 million shares of XTO stock. 
179,618 copies of notice of the suit were mailed to potential class members. 
As Geoffrey Miller opined,

Unlike hourly billing
attorneys, there was little likelihood that Plaintiffs’ counsel would be
retained on an hourly basis by members of the plaintiff class based on their
representation of the class in a class action.  Thus the concept of undertaking
a potentially less economically beneficial retention as a “loss leader” plays
no role in cases such as this.

7.  The
experience, reputation, and ability of the lawyer or lawyers performing the
services

 

          With
ninety different attorneys performing work on this case, the amount of
experience and ability will naturally vary.  Some of the senior partners had
thirty or forty years of experience.  There were also young associates with
little experience.  Overall, there were many firms with good reputations and
national practices.  Enoch testified that this factor “gets a lot of weight
from me. . . .  You’re talking about pretty significant litigation. . . .  [I]t’s
a significant transaction. . . .  [T]he quality of the lawyer in here
is a critical piece of it, and that should get a positive.”  Geoffrey Miller
testified that the favorable settlement “evidences the superior quality of
their work.”

8.  Whether
the fee is fixed or contingent on results obtained or uncertainty of collection
before the legal services have been rendered

 

Geoffrey
Miller stated in his affidavit, “The contingent nature of the fee arrangement
is, without doubt, the most important factor in a lodestar/multiplier
analysis.”  All of the firms’ fees were on a fully contingent basis.  Enoch
noted, “[T]here is a recognition of an additional value for the services
performed in exchange for running the risk that there [will] be no recovery at
all.”  Increasing the lodestar for contingent work, he said, is “about trying
to attract quality lawyers to work in this field and assure that their risk is
carefully accounted for.”  He testified, “[T]he straight lodestar does not take
into account the risk, the evaluation of the . . . economic value of the lawyer
taking on the risk of not being paid at all.”  All of the attorneys testified
that the hourly rates they submitted were the “regular rates that [the] firm[s]
charge[] both hourly clients and contingent clients alike.”  See El
Apple I, Ltd. v. Olivas, 324 S.W.3d 181, 193–94 (Tex. App.—El Paso 2010,
pet. granted) (upholding the application of a multiplier based in part on the
contingent nature of the fee “[b]ecause there is no indication the trial court
considered the contingency factor more than once in its calculation” when the
attorneys testified that they did not adjust their hourly fee because of the
contingent nature of the case).  We also note that Texas courts consistently
allow the use of a multiplier based upon the contingent nature of a fee under
Texas statutes allowing recovery of attorney’s fees.  Toshiba Mach. Co., Am.
v. SPM Flow Control, Inc., 180 S.W.3d 761, 783 (Tex. App.—Fort Worth 2005, pet.
granted, judgm’t vacated w.r.m.); Dillard Dept Stores, 72 S.W.3d at 412;
Guity, 54 S.W.3d at 529; Borg-Warner Protective Servs. v.
Flores, 955 S.W.2d 861, 870 (Tex. App.—Corpus Christi 1997, no pet.); Crouch
v. Tenneco, 853 S.W.2d 643, 648 (Tex. App.—Waco 1993, writ denied).

Miller
also opined that “Plaintiffs’ counsel was entitled to a substantial risk
multiplier for their efforts in the Actions” and that the requested multiplier “is
both fair and reasonable under the law of Texas and under the circumstances of
the Actions.”  In his opinion, a multiplier of 2.17 is “eminently fair based on
how the courts generally handle cases of this type” and that even a multiplier “at
or near the upper limit . . . would not have been unreasonable.”  A multiplier
of 2.17 is not unusual in large, complex, and expedited cases.  See Dillard
Dep’t Stores, 72 S.W.3d at 413 (upholding a multiplier of 2 based on the
novelty and difficulty of the issues, the contingent nature of the fee, the
time limitations imposed by the circumstances, and the preclusion of other
employment); Flores, 955 S.W.2d at 870 (upholding use of a 1.5
multiplier when plaintiff prevailed on all issues and “was required to pierce
numerous layers of corporate bureaucracy in order to bring her case to trial”).

The
trial court ordered attorneys’ fees paid in the amount of the unenhanced
lodestar based on the assumption that the Johnson factors were applied
in justifying the hourly rates requested.  The unenhanced lodestar does not
reflect the exceptional results achieved by Plaintiffs’ counsel, the
undesirability of this litigation, the high risk borne by its contingent
nature, or the fact that the fee award requested is comparable to that awarded
in similar class action litigation, all of which were directly established by
uncontradicted evidence.  The court was obligated to consider the adjustment
based on that evidence and the Johnson factors, and it was an abuse of
discretion to fail to do so based on an unsubstantiated assumption.  We hold
that the requested multiplier of 2.17 is appropriate in this case.  The lodestar
of $3,968,277.25 multiplied by 2.17 equals an award of $8,611,161.63, which we
hold to be an appropriate and reasonable award.

          Because
we sustain Plaintiffs’ third issue and because we have determined an
appropriate award of attorneys’ fees, we need not reach the rest of Plaintiffs’
issues.  See Tex. R. App. P. 47.1.

Conclusion

Having
sustained Plaintiffs’ third issue and holding that we do not need to reach
their other issues, we modify the trial court’s award of attorneys’ fees to be
$8,611,161.63 and affirm the trial court’s judgment as modified.

 

 

 

LEE GABRIEL
JUSTICE

 

PANEL: 
WALKER,
MEIER, and GABRIEL, JJ.

 

MEIER, J., filed a
dissenting opinion.

DELIVERED:  February 9, 2012

 




 

 









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00483-CV

 

 


 
 
 William D. Stratton
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 XTO Energy Inc., Bob R. Simpson, William H. Adams
 III, Lane G. Collins, Phillip R. Kevil, Jack P. Randall, Scott G. Sherman,
 Herbert D. Simons, Keith A. Hutton, Vaughn O. Vennerberg II, Louis G.
 Baldwin, Timothy L. Petrus, Gary D. Simpson, Exxon Mobil Corporation, and
 Exxon Mobil Investment Corporation
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

FROM THE 352nd
District Court OF Tarrant COUNTY

----------

DISSENTING
MEMORANDUM OPINION[10]

----------

          The
lynchpin of the majority opinion states “it appears that the trial court did
not complete the required steps.”  Because I would treat the October 8, 2010
letter as nothing more than what the trial court stated in the opening
paragraph of the letter—“This letter attempts to clarify some of the reasons
for the court’s ruling, but it should not be considered an exhaustive or
complete discussion of all considerations given to the Motion for Final
Certification prior to the court’s ruling thereon.”—I do not read the letter to
support an appellate ruling that “the trial court did not complete the required
steps.”  To the extent that we permit the trial court’s letter to function as
rule of civil procedure 42(h)(3) findings of fact and conclusions of law,
reviewing the letter in its entirety—instead of considering one short phrase
contained within the letter in isolation—reveals that the trial court declined
to adjust the presumptively reasonable lodestar because it had already
accounted for relevant Johnson factors in determining the lodestar.  For
these reasons, I dissent.

          Our
rules of civil procedure contain detailed requirements for class action
lawsuits, including procedures for determining an award of attorneys’ fees.  See
Tex. R. Civ. P. 42(h).  After a motion for attorneys’ fees and a hearing,
“[t]he [trial] court must state its findings and conclusions in writing
or orally on the record.”  Tex. R. Civ. P. 42(h)(3) (emphasis added).  Rule 42
“is patterned after Federal Rule of Civil Procedure 23; consequently, federal
decisions and authorities interpreting current federal class action
requirements are persuasive authority.”  Sw. Ref. Co. v. Bernal, 22
S.W.3d 425, 433 (Tex. 2000).  Federal rule of civil procedure 23(h)(3) provides
that the trial court may hold a hearing on attorneys’ fees in a class action
suit but, similar to our rules, “must find the facts and state its legal
conclusions under Rule 52(a).”  Fed. R. Civ. P. 23(h)(3).  The Fifth Circuit
requires that “[w]hen a district court awards attorneys’ fees it must explain
how each of the Johnson factors affects its award.”  See In re
High Sulfur Content Gasoline Prods. Liab. Litig., 517 F.3d 220, 228 (5th
Cir. 2008).  “[T]he district court’s findings and reasons must be ‘complete
enough to assume a review which can determine whether the court has used proper
factual criteria in exercising its discretion to fix just compensation.’”  Id.
at 229 (citing Brantley v. Surles, 804 F.2d 321, 325–26 (5th Cir.
1986)).

          The
trial court’s October 8, 2010 letter specifically warns at the outset that it
“attempts to clarify some of the reasons for the court’s ruling, but it should
not be considered an exhaustive or complete discussion of all considerations
given to the Motion for Final Certification prior to the court’s ruling
thereon.”  Thus, on its face, the letter purports to acknowledge its own
inherent incompleteness.[11]  The trial court did not
explain how each of the Johnson factors affected its award, and we are
left to speculate as to the findings that are not contained in the letter.  As
an appellate court reviewing an award of attorneys’ fees in a complex class
action suit involving “one of the largest mergers in U.S. history,” we should
not follow the analysis advocated by Stratton in his third issue and rely upon
the incomplete letter as a substitute for rule 42(h)(3) findings and
conclusions.  This is because, unless the trial court provides a reasonably
specific explanation of the fee determination, “adequate appellate review is
not feasible, and without such review, widely disparate awards may be made, and
awards may be influenced . . . by a judge’s subjective
opinion regarding particular attorneys or the importance of the case.”  See Perdue
v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1676 (2010).  The
trial court’s letter meets neither the Supreme Court’s nor the Fifth Circuit’s
standards for explaining an award of attorneys’ fees.  Accordingly, I would
either abate this appeal and remand the case to the trial court for entry of
findings and conclusions as required by rule 42(h)(3) or reverse the trial
court’s judgment as to attorneys’ fees and remand the case for further
proceedings.

          To
the extent that we construe the October 8, 2010 letter as sufficiently
identifying the trial court’s findings and conclusions and proceed to address
Stratton’s third issue, the trial court did not abuse its discretion by
awarding attorneys’ fees in the amount of $3,972,367.75.  The lodestar creates
a presumptively reasonable fee.  Id. at 1673.  “While the lodestar is
relevant to determining a fee award, it is not the sole basis for determining
that award; the Johnson factors are applicable to deciding whether the
lodestar is reasonable, as well as to adjusting that award by a multiplier once
the lodestar is calculated.”  In re Enron Corp. Sec., Derivative &
ERISA Litig., 586 F. Supp. 2d 732, 755 (S.D. Tex. 2008); see Hensley v.
Eckerhart, 461 U.S. 424, 434 n.9, 103 S. Ct. 1933, 1940 n.9 (1983)
(“The district court also may consider other factors identified in [Johnson]
though it should note that many of these factors usually are subsumed within
the initial calculation of hours reasonably expended at a reasonable hourly
rate.”).  Indeed, four of the Johnson factors are presumably included in
the lodestar calculation (the novelty and complexity of the issues, the special
skill and experience of counsel, the quality of representation, and the results
obtained from the litigation), and the Fifth Circuit has reasoned that two
other factors are generally subsumed in the lodestar (the time limitations and
the circumstances and preclusion of other employment).  See Enron Corp.,
586 F. Supp. 2d at 756–57 (citing Shipes v. Trinity Indus., 987 F.2d
311, 321–22 (5th Cir.), cert. denied, 510 U.S. 991 (1993)); see also
Perdue, 130 S. Ct. at 1673 (reasoning that the “lodestar includes
most, if not all, of the relevant factors constituting a ‘reasonable’
attorney’s fee”).  The time and labor involved and the customary fee may also
be considered in calculating the lodestar.  See, e.g., Nassar v. Univ. of
Tex. Sw. Med. Ctr., No. 3:08-CV-1337-B, 2010 WL 3000877, at *6 (N.D. Tex.
July 27, 2010) (mem. op.).  But while these factors may be considered in
calculating the lodestar, it is well established that the lodestar may not be
adjusted in consideration of a Johnson factor if that factor was already
accounted for in arriving at the lodestar; “to do so would be impermissible
double counting.”[12]  Saizan v. Delta
Concrete Prods. Co., 448 F.3d 795, 800 (5th Cir. 2006); see Perdue,
130 S. Ct. at 1673 (recognizing that the Court has “held that an
enhancement may not be awarded based on a factor that is subsumed in the
lodestar calculation”).

          The
trial court concluded its letter by stating that it had “accepted the billed
amounts as the lodestar on the assumption that the Johnson factors have
already been applied.”  From this snippet, the majority concludes that “it
appears that the trial court did not complete the required steps” because the
trial court “‘assumed’ that the Johnson factors were accounted for in
Plaintiffs’ calculations.”  Maj. Op. at 7.  This is a misconstruction of the
letter and of the trial court’s attorneys’ fees award.  The mistake made by the
majority is that it construes the letter’s final sentence in isolation and
apart from the remainder of the letter, which unambiguously indicates that the
trial court had numerous concerns about the reasonableness of both the rates
charged and the hours expended by the plaintiffs’ attorneys.  After explaining
some of its concerns about the rates and hours, the trial court stated,

Texas law seems clear
that when Johnson factors are already accounted for in determining the
reasonable rates (the lodestar amount), they should not again be considered
when making adjustments.  To rely on Johnson factors both to justify
high rates and to justify the application of a multiplier would result in a
duplicative award of fees.

At
the request of Stratton, the trial court conducted an exhaustive hearing on
December 17, 2010, and thereafter declined to modify the original Order and
Final Judgment.

          Considering
the letter as a whole, the trial court did not decline to adjust the lodestar
because it merely “assumed” that the Johnson factors had already been
accounted for in the lodestar; rather, it did take into account certain Johnson
factors—and possibly all of the Johnson factors—in arriving at the
presumptively reasonable lodestar and then either (1) refused to double
count those same factors in considering a multiplier or (2) considered
certain Johnson factors not addressed in calculating the lodestar as
irrelevant for purposes of the multiplier.  The trial court’s inaction after
permitting Stratton to supplement the record—thus maintaining an award of 100%
of the lodestar, an amount within the range prescribed by rule
42(i)(1)—supports this conclusion.  In light of the introductory warning that
the letter was meant to clarify only “some of the reasons for the court’s
ruling,” we have no way of knowing what Johnson factors, if not all of
them, were considered in calculating the lodestar and what factors, if any, the
trial court thought were irrelevant in considering a multiplier.  What evidence
we do have, however, does not demonstrate an abuse of discretion.  Accordingly,
to the extent that we address Stratton’s third issue, I would affirm the trial court’s
judgment.

          For
the foregoing reasons, I respectfully dissent.

 

 

BILL MEIER
JUSTICE

 

DELIVERED: 
February 9, 2012

 









[1]See Tex. R. App. P. 47.4.





[2]The Johnson factors
are:  (1) the time and labor required for the litigation; (2) the novelty and
difficulty of the questions presented; (3) the skill required to perform the
legal services properly; (4) the preclusion of other employment by the attorney
due to acceptance of the case; (5) the customary fee; (6) whether the fee is
fixed or contingent; (7) time limitations imposed by the client or the
circumstances; (8) the amount involved and the result obtained; (9) the
experience, reputation and ability of the attorneys; (10) the “undesirability”
of the case; (11) the nature and length of the professional relationship with
the client; and (12) awards in similar cases.  Johnson, 488 F.2d at
717–19.  Plaintiffs’ counsel and the trial court refer to the Rule 1.04(b)
factors and the Johnson factors interchangeably.  Because they are so
similar, we will do the same and will rely on cases applying the Johnson
factors.





[3]As the dissent points out,
the trial court’s letter states that it “should not be considered an exhaustive
or complete discussion of all considerations given to the Motion for Final
Certification prior to the court’s ruling thereon,” and it was not intended to
be findings of facts and conclusions of law.  It is, however, the only insight
in the record into the court’s reasons for its judgment and we consider it for
what usefulness it provides.





[4]Plaintiffs’ fourth issue
challenges the award as failing to consider the undisputed evidence that the
requested amount was reasonable.  As we stated above, we agree that the trial
court ignored the uncontroverted evidence on the reasonableness of the
requested award.  Thus, we could alternatively reverse the award on the grounds
asserted in Plaintiffs’ fourth issue.





[5]One firm that had
submitted an affidavit with the application did not submit a second affidavit
with the motion to modify.





[6]Of the 7,369.9 hours
submitted, the number of hours without direct testimony supporting their
reasonableness and necessity equaled 386.35, or 5.2% of the total hours
submitted.





[7]Plaintiffs also submitted
the affidavit of expert witness Arthur R. Miller.  Arthur Miller, however, did
not state an opinion specifically as to the reasonableness or necessity of the
hours billed.





[8]All of the affidavits in
which a firm requested expenses also contained the same language that their
expenses were “reasonable under the circumstances and were necessary to achieve
the settlement reached in this case.”  The trial judge awarded all of the
requested $188,355.66 in expenses.  The Plaintiffs do not contest that part of
the award.





[9]The attorney at The
Briscoe Law Firm, PLLC submitted 45.25 hours at $525 (a total of $23,756.25 in
fees) but requested $27,756.25 in fees.  We see no justification for the
additional $4,000.  See Stewart Title Guar. Co., 822
S.W.2d at 10.





[10]See Tex. R. App.
P. 47.4.





[11]The majority even seems
to acknowledge this.





[12]An upward adjustment of
the lodestar based on factors that are presumably included in the lodestar
amount is still permissible, but “such modifications are proper only in certain
rare and exceptional cases supported by both specific evidence on the record
and detailed findings by the lower courts.”  Shipes, 987 F.2d at 320.